# Matter of M-A-M-, Respondent

*Decided May 4, 2011*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Aliens in immigration proceedings are presumed to be competent and, if there are no indicia of incompetency in a case, no further inquiry regarding competency is required.

(2) The test for determining whether an alien is competent to participate in immigration proceedings is whether he or she has a rational and factual understanding of the nature and object of the proceedings, can consult with the attorney or representative if there is one, and has a reasonable opportunity to examine and present evidence and cross-examine witnesses.

(3) If there are indicia of incompetency, the Immigration Judge must make further inquiry to determine whether the alien is competent for purposes of immigration proceedings.

(4) If the alien lacks sufficient competency to proceed, the Immigration Judge will evaluate appropriate safeguards.

(5) Immigration Judges must articulate the rationale for their decisions regarding competency issues.

FOR RESPONDENT: Janet B. Beck, Esquire, Houston, Texas

FOR THE DEPARTMENT OF HOMELAND SECURITY: Elliot Selle, Assistant Chief Counsel

BEFORE: Board Panel: NEAL, Acting Chairman; GREER, Board Member; and KENDALL CLARK, Temporary Board Member.

GREER, Board Member:

In a decision dated June 16, 2010, an Immigration Judge found the respondent removable under sections 237(a)(2)(A)(ii) and (B)(i) of the Immigration and Nationality Act, 8 U.S.C. §§ 1227(a)(2)(A)(ii) and (B)(i) (2006), and concluded that he is ineligible for relief from removal. The respondent has appealed from that decision and has submitted a motion to remand, arguing, in part, that the Immigration Judge did not assess his mental competency. In this decision, we set forth a framework for Immigration Judges to determine whether a respondent is sufficiently

competent to proceed and whether the application of safeguards is warranted. The record will be remanded to the Immigration Judge.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Jamaica who was admitted to the United States as a lawful permanent resident on February 19, 1971, when he was 10 years old.  On July 31, 2008, the Department of Homeland Security ("DHS") served the respondent with a Notice to Appear (Form I-862), charging that he is removable under section 237(a)(2)(A)(ii) of the Act on the basis of his conviction for two or more crimes involving moral turpitude.  The DHS subsequently amended the allegations and lodged additional charges, charging the respondent with removability under section 237(a)(2)(B)(i) of the Act, as an alien convicted of a controlled substance violation, and under section 237(a)(2)(A)(iii), as an alien convicted of a drug-trafficking aggravated felony pursuant to section 101(a)(43)(B) of the Act, 8 U.S.C. § 1101(a)(43)(B) (2006).

When the respondent first appeared before an Immigration Judge for a master calendar hearing on September 14, 2009, he had difficulty answering basic questions, such as his name and date of birth, and he told the Immigration Judge that he had been diagnosed with schizophrenia.  He also indicated that he needed medication.  At the second hearing, on October 21, 2009, the respondent indicated that he had a history of mental illness that was not being treated in detention.  The respondent requested a change of venue to be closer to his attorney and family, but the request was denied.  Additional hearings were held on November 4, 2009, December 7, 2009, January 25, 2010, and April 1, 2010.  During those hearings, further reference was made to the respondent's mental illness and he asked to see a psychiatrist.

On June 16, 2010, a different Immigration Judge convened the final merits hearing.  At that time, psychiatric evaluations and reports about the respondent from New York State's Office of Mental Health were included in the record. The Immigration Judge asked the respondent about his mental health and treatment.  Specifically, the Immigration Judge asked the respondent whether he was able to proceed with the hearing, and the respondent answered that he would do the best he could.

Initially, the respondent indicated that he could not represent himself but, upon further questioning by the Immigration Judge, said he "believed" that he could answer the questions put to him by the Immigration Judge and the DHS attorney.  The Immigration Judge proceeded with the merits hearing, asking the respondent questions about his entry into the United States, his criminal convictions, and his fear of returning to Jamaica.  Throughout the proceedings, the respondent appeared pro se.

In her decision, the Immigration Judge summarized the respondent's mental health history but did not make an explicit finding regarding his mental competency. The Immigration Judge found the respondent removable on the charges relating to his convictions for crimes involving moral turpitude and controlled substance violations, but not on the aggravated felony charge. The Immigration Judge denied the respondent's application for cancellation of removal under section 240A(a) of the Act, 8 U.S.C. § 1229b(a) (2006), in the exercise of discretion. She also denied his applications for asylum and withholding of removal because the respondent did not establish a nexus or harm that was sufficiently severe to constitute persecution. The Immigration Judge also found the respondent ineligible for protection under the Convention Against Torture, and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46. 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988).

The respondent, now represented, has appealed from the Immigration Judge's decision and challenges the decision on the merits. The respondent has also submitted a motion to remand arguing, in part, that the Immigration Judge failed to properly assess his mental competency.

## II. ISSUES

This case presents three questions related to mental competency determinations: (1) When should Immigration Judges make competency determinations? (2) What factors should Immigration Judges consider and what procedures should they employ to make those determinations? (3) What safeguards should Immigration Judges prescribe to ensure that proceedings are sufficiently fair when competency is not established?

## III. ANALYSIS

We recognize that this is a difficult area of the law and that our decision today addresses a limited set of questions regarding aliens with competency issues in immigration proceedings. Nevertheless, our goal is to ensure that proceedings are as fair as possible in an unavoidably imperfect situation. To that end, this decision will provide a framework for analyzing cases in which issues of mental competency are raised.[1]

---

[1]  Our analysis is largely consistent with agency practice as reflected in the Immigration Judge Benchbook. *Immigration Judge Benchbook*, Introductory Guides, Mental Health Issues, http://www.justice.gov/eoir/vll/benchbook/tools/MHI/.

## A.  Presumption of Competency

As a threshold matter, we find that an alien is presumed to be competent to participate in removal proceedings. *See, e.g.*, *Munoz-Monsalve v. Mukasey*, 551 F.3d 1, 6 (1st Cir. 2008) (finding that it is the alien's burden to first raise the issue of competency); *cf. United States v. Shan Wei Yu*, 484 F.3d 979, 985 (8th Cir. 2007) (stating that in a criminal proceeding, competency is "presumed 'absent some contrary indication' arising from irrational behavior, the defendant's demeanor, and any prior medical opinions addressing the defendant's competency" (quoting *United States v. Long Crow*, 37 F.3d 1319, 1325 (8th Cir. 1994))). *See generally Valenzuela-Solari v. Mukasey*, 551 F.3d 53, 57 (1st Cir. 2008) (finding that if there is a claim of language disability, the alien must ordinarily raise it first in the agency proceedings).

Absent indicia of mental incompetency, an Immigration Judge is under no obligation to analyze an alien's competency. *Munoz-Monsalve v. Mukasey*, 551 F.3d at 6 (finding that an Immigration Judge's failure to sua sponte order a competency evaluation did not violate the alien's due process rights where he was represented, his attorney did not request an evaluation, and the record did not contain evidence of a lack of competency); *Nelson v. INS*, 232 F.3d 258, 261-62 (1st Cir. 2000) (finding that health-related complaints such as headache and poor memory do not rise to the level of mental incompetency).

The Act and the regulations contemplate circumstances in which competency concerns trigger the application of appropriate safeguards. We will examine the governing statutory and regulatory authority, as interpreted by case law, to address the issues presented.

## B.  Legal Authority

### 1.  Statutory and Regulatory Provisions

The Act acknowledges that aliens in proceedings may be mentally incompetent.  Specifically, the Act provides as follows:

> If it is impracticable by reason of an alien's mental incompetency for the alien to be present at the proceeding, the Attorney General shall prescribe safeguards to protect the rights and privileges of the alien.

Section 240(b)(3) of the Act, 8 U.S.C. § 1229a(b)(3) (2006).  The Act's invocation of safeguards presumes that proceedings can go forward, even where the alien is incompetent, provided the proceeding is conducted fairly.

The regulations provide guidance regarding the treatment of aliens who lack mental competency. An incompetent alien must be served with the Notice to Appear in person. 8 C.F.R. § 103.5a(c)(2) (2010). If the alien is confined in a penal or mental institution or hospital, service generally must be made on the alien, as well as the person in charge of the institution, although if the alien is incompetent, service can only be made on the person in charge of the institution where the alien is confined. 8 C.F.R. § 103.5a(c)(2)(i). If the alien is not confined, service must be made on the person with whom the alien resides. 8 C.F.R. § 103.5a(c)(2)(ii). Further, "whenever possible, service shall also be made on the near relative, guardian, committee, or friend." *Id.*

Additional requirements are prescribed in the regulations to ensure that an incompetent alien is afforded an adequate opportunity to present his or her case during a hearing. Immigration Judges may not accept an admission of removability from an unrepresented respondent who is incompetent and unaccompanied. 8 C.F.R. § 1240.10(c) (2010). When it is impracticable for the respondent to be present at the hearing because of mental incompetency, the attorney, legal representative or guardian, near relative, or friend who was served with a copy of the Notice to Appear is permitted to appear on behalf of the respondent. 8 C.F.R. §§ 1240.4, 1240.43 (2010). If such a person cannot be found or fails or refuses to appear, the regulations provide that the "custodian of the respondent shall be requested to appear on behalf of the respondent." *Id.*

If an Immigration Judge determines that a respondent lacks sufficient competency to proceed with the hearing, the Immigration Judge will evaluate which available measures would result in a fair hearing. Immigration Judges "shall prescribe safeguards to protect the rights and privileges of the alien." Section 240(b)(3) of the Act; *see also* 8 C.F.R. § 1003.10(b) (2010).

Although the Act and the regulations provide direction for handling cases in which competency is an issue, they do not set forth the process that an Immigration Judge should use to assess the competency of an alien appearing in Immigration Court. This decision sets out a framework for that purpose.

### 2. Competency for Purposes of Immigration Proceedings

Although immigration proceedings are civil in nature, the law regarding mental competency issues in criminal proceedings is well developed, and we consider it instructive. The United States Supreme Court has held in the criminal context that a person is not competent to stand trial if "he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope v. Missouri*, 420 U.S. 162, 171 (1975).

Unlike in criminal proceedings, a lack of competency in civil immigration proceedings does not mean that the hearing cannot go forward; rather, procedural fairness is required. In immigration proceedings, the Fifth Amendment entitles aliens to due process of law. *Reno v. Flores*, 507 U.S. 292, 306 (1993). Included in the rights that the Due Process Clause requires in removal proceedings is the right to a full and fair hearing. *Matter of M-D-*, 23 I&N Dec. 540, 542 (BIA 2002) (citing *Landon v. Plasencia*, 459 U.S. 21, 32-33 (1982)). "A removal hearing must be conducted in a manner that satisfies principles of fundamental fairness." *Matter of Beckford*, 22 I&N Dec. 1216, 1225 (BIA 2000); *see also Shaughnessey v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) (stating that immigration proceedings must conform to traditional standards of fairness encompassed in due process).

To meet traditional standards of fundamental fairness in determining whether an alien is competent to participate in immigration proceedings, Immigration Judges must accord aliens the specific "rights and privileges" prescribed in the Act. Section 240(b)(3) of the Act. For example, aliens "shall have the privilege of being represented" at no expense to the Government. Sections 240(b)(4)(A), 292 of the Act, 8 U.S.C. §§ 1229a(b)(4)(A), 1362 (2006). In addition, the Act requires that an alien have a "reasonable opportunity" to examine and present evidence and to cross-examine witnesses. Section 240(b)(4)(B) of the Act; *see also* 8 C.F.R. § 1240.10(a)(4). Therefore, the test for determining whether an alien is competent to participate in immigration proceedings is whether he or she has a rational and factual understanding of the nature and object of the proceedings, can consult with the attorney or representative if there is one, and has a reasonable opportunity to examine and present evidence and cross-examine witnesses.

## C. Framework for Cases Presenting Competency Issues

### 1. Indicia of Incompetency

In cases involving aliens with issues of mental competency, Immigration Judges will need to consider whether there is good cause to believe that the alien lacks sufficient competency to proceed without safeguards. Indicia of incompetency include a wide variety of observations and evidence. For example, the Immigration Judge or the parties may observe certain behaviors by the respondent, such as the inability to understand and respond to questions, the inability to stay on topic, or a high level of distraction. Second, the record may contain evidence of mental illness or incompetency. This could include direct assessments of the respondent's mental health, such as medical reports or assessments from past medical treatment or from criminal proceedings, as well as testimony from medical health professionals. It may also include evidence from other relevant sources, such as school records regarding special

education classes or individualized education plans; reports or letters from teachers, counselors, or social workers; evidence of participation in programs for persons with mental illness; evidence of applications for disability benefits; and affidavits or testimony from friends or family members.

The DHS will often be in possession of relevant evidence, particularly where the alien is detained. The DHS has an obligation to provide the court with relevant materials in its possession that would inform the court about the respondent's mental competency. 8 C.F.R. § 1240.2(a) (2010) ("[DHS] counsel shall present on behalf of the government evidence material to the issues of deportability or inadmissibility and any other issues that may require disposition by the immigration judge."); *see also Matter of S-M-J-*, 21 I&N Dec. 722, 726-27 (BIA 1997) (discussing generally the DHS's role in introducing evidence), *disapproved of on other grounds*, *Ladha v. INS*, 215 F.3d 889 (9th Cir. 2000).

Mental competency is not a static condition. "It varies in degree. It can vary over time. It interferes with an individual's functioning at different times in different ways." *Indiana v. Edwards*, 554 U.S. 164, 175 (2008). As a result, Immigration Judges need to consider indicia of incompetency throughout the course of proceedings to determine whether an alien's condition has deteriorated or, on the other hand, whether competency has been restored.

Even if an alien has been deemed to be medically competent, there may be cases in which an Immigration Judge has good cause for concern about the ability to proceed, such as where the respondent has a long history of mental illness, has an acute illness, or was restored to competency, but there is reason to believe that the condition has changed. In such cases, Immigration Judges should apply appropriate safeguards.

On the other hand, we also recognize that there are many types of mental illness that, even though serious, would not prevent a respondent from meaningfully participating in immigration proceedings. In other words, a diagnosis of mental illness does not automatically equate to a lack of competency.

## 2. Measures To Assess Competency

When there are indicia of incompetency, an Immigration Judge must take measures to determine whether a respondent is competent to participate in proceedings. The approach taken in any particular case will vary based on the circumstances of the case.

For instance, an Immigration Judge may modify the questions posed to the respondent to make them very simple and direct. The inquiries made should include questions about where the hearing is taking place, the nature of the proceedings, and the respondent's state of mind. In addition, an

Immigration Judge might ask the respondent whether he or she currently takes or has taken medication to treat a mental illness and what the purpose and effects of that medication are. Proceedings may also be continued to allow the parties to gather and submit evidence relevant to these matters, such as medical treatment reports, documentation from criminal proceedings, or letters and testimony from other third party sources that bear on the respondent's mental health.

Another measure available to Immigration Judges is a mental competency evaluation. *See, e.g.*, *Matter of J-F-F-*, 23 I&N Dec. 912, 915 (A.G. 2006) (noting that at the Immigration Judge's request, the DHS arranged for a psychiatric evaluation of a detained alien, which led the psychiatrist to conclude that the alien understood the proceedings and wanted to proceed with the hearing). Immigration Judges can also permit a family member or close friend to assist the respondent in providing information. In addition, Immigration Judges can docket or manage the case to facilitate the respondent's ability to obtain medical treatment and/or legal representation. For example, a continuance or motion to change venue may be granted to enable a respondent to be closer to family or available treatment programs. Immigration Judges can continue proceedings to allow for further evaluation of competency or an assessment of changes in the respondent's condition.

The Immigration Judge must weigh the results from the measures taken and determine, under the test for competency set out above, whether the respondent is sufficiently competent to proceed with the hearing without safeguards. *Cf. Matter of Sinclitico*, 15 I&N Dec. 320 (BIA 1975) (finding that the respondent was not sufficiently competent to voluntarily relinquish his citizenship where he did not seem to understand the questions asked of him, his answers to questions were not responsive, there was medical evidence of mental illness, and the respondent's brother testified regarding his mental illness). The Immigration Judge must also articulate that determination and his or her reasoning.

### 3. Safeguards

If an Immigration Judge determines that a respondent lacks sufficient competency to proceed with the hearing, the statute provides that the Immigration Judge "shall prescribe safeguards to protect the rights and privileges of the alien." Section 240(b)(3) of the Act. Based on the statutory and regulatory parameters, we conclude that Immigration Judges have

discretion to determine which safeguards are appropriate, given the particular circumstances in a case before them.[2]

As noted above, the regulations provide guidance regarding safeguards to protect aliens who otherwise lack sufficient competency to meaningfully participate in proceedings. For example, the regulations prohibit Immigration Judges from accepting an admission of removability from an unrepresented alien who is incompetent and provide that when an alien is mentally incompetent, the attorney, near relative, or friend who was served with a copy of the Notice to Appear is permitted to appear on the respondent's behalf. 8 C.F.R. §§ 1240.4, 1240.10(c), 1240.43. If such a person cannot be found or fails or refuses to appear, the regulations provide that the respondent's custodian "shall be requested to appear on behalf of the respondent." 8 C.F.R. §§ 1240.4, 1240.43.

Case law also provides guidance to Immigration Judges for determining how they may fairly proceed when an alien lacks competency. We have held that an alien's due process rights were not violated in a deportation hearing where he was represented by an attorney who was able to introduce evidence and cross-examine witnesses, a doctor testified regarding his medical condition, and the respondent appeared to testify intelligently and rationally. *Matter of H-*, 6 I&N Dec. 358 (BIA 1954). In addition, the Attorney General has stated that "[i]t is appropriate for Immigration Judges to aid in the development of the record, and directly question witnesses." *Matter of J-F-F-*, 23 I&N Dec. at 922; *see also* section 240(b)(1) of the Act (providing that Immigration Judges shall "interrogate, examine, and cross-examine the alien and any witnesses"); 8 C.F.R. § 1240.11(a)(2) (2010) ("The immigration judge shall inform the alien of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter and shall afford the alien an opportunity to make application during the hearing.").

Several Federal circuit courts have also considered the fairness of proceedings involving aliens with indicia of mental incompetency. For example, the United States Court of Appeals for the Ninth Circuit held that the due process rights of an alien with a mental illness were not violated where he was represented by counsel and was accompanied by a State court-appointed conservator who testified fully on his behalf. *Nee Hao Wong v. INS*, 550 F.2d 521, 523 (9th Cir. 1977). Similarly, the Tenth Circuit concluded that procedural safeguards were in place and the alien had

---

[2] Immigration Judges already alter or tailor the conduct of hearings in response to a respondent's limited capacity, such as in proceedings involving unaccompanied minors. *See* Operating Policies and Procedures Memorandum 07-01: Guidelines for Immigration Court Cases Involving Unaccompanied Alien Children (May 22, 2007), http://www.justice.gov/eoir/efoia/ocij/oppm07/07-01.pdf.

an opportunity to be heard at a meaningful time and in a meaningful manner where the alien was represented and was able to answer the questions posed to him and provide his version of the facts. *Brue v. Gonzales*, 464 F.3d 1227, 1232-34 (10th Cir. 2006). The Eighth Circuit also held that an Immigration Judge was not required to determine competency where the respondent answered the charges against him, testified in support of his claim for withholding of removal, arranged for two witnesses to appear on his behalf, was aware of the nature and object of the proceedings, and vigorously resisted removal. *Mohamed v. Gonzales*, 477 F.3d 522, 526-27 (8th Cir. 2007). In addition, the First Circuit concluded that an alien's due process rights were not violated where he was represented, his attorney does not request an evaluation, and the record did not contain evidence of a lack of competency. *Munoz-Monsalve v. Mukasey*, 551 F.3d at 6-8.

Drawing guidance from the regulations and legal precedent, we note that there are a number of safeguards available to Immigration Judges, some of which they may have already taken when initially assessing the respondent's competency. Examples of appropriate safeguards include, but are not limited to, refusal to accept an admission of removability from an unrepresented respondent; identification and appearance of a family member or close friend who can assist the respondent and provide the court with information; docketing or managing the case to facilitate the respondent's ability to obtain legal representation and/or medical treatment in an effort to restore competency; participation of a guardian in the proceedings; continuance of the case for good cause shown; closing the hearing to the public; waiving the respondent's appearance; actively aiding in the development of the record, including the examination and cross-examination of witnesses; and reserving appeal rights for the respondent. The Immigration Judge will consider the facts and circumstances of an alien's case to decide which of these or other relevant safeguards to utilize. The Immigration Judge must articulate his or her reasoning for the decision.

In some cases, even where the court and the parties undertake their best efforts to ensure appropriate safeguards, concerns may remain. In these cases, the Immigration Judge may pursue alternatives with the parties, such as administrative closure, while other options are explored, such as seeking treatment for the respondent.[3]

---

[3] We recognize that the Act provides that certain aliens with mental illness are inadmissible under section 212(a)(1)(A)(iii) of the Act, 8 U.S.C. § 1182(a)(1)(A)(iii) (2006), or removable under section 237(a)(1)(A) for having been inadmissible at the time of entry or at the time of adjustment of status. Proceedings involving inadmissibility under those sections present a different legal scenario, which is not addressed in this decision.

### D.  Summary of Legal Framework

To summarize, if there are no indicia of incompetency in an alien's case, no further inquiry regarding competency is required.  The test for determining whether an alien is competent to participate in immigration proceedings is whether he or she has a rational and factual understanding of the nature and object of the proceedings, can consult with the attorney or representative if there is one, and has a reasonable opportunity to examine and present evidence and cross-examine witnesses.  If there are indicia of incompetency, the Immigration Judge must make further inquiry to determine whether the alien is competent for purposes of immigration proceedings.  If the alien lacks sufficient competency to proceed, the Immigration Judge will evaluate and apply appropriate safeguards.  The Immigration Judge must articulate the rationale for his or her decision.

## IV.  CONCLUSION

In this case, there is good cause to believe that the respondent lacked sufficient competency to proceed with the hearing.  The record includes several psychiatric reports that diagnose him with mental illness, and during criminal proceedings, the respondent was found to be unfit to proceed with a trial.  Additionally, before the Immigration Judge, the respondent had difficulty answering questions, discussed his illness and need for medication, and asked to see a psychiatrist.

Given these circumstances, we will remand the record to the Immigration Judge to apply the framework articulated here.  On remand, the Immigration Judge should take steps to assess the respondent's competency, make a finding regarding his competency, apply safeguards as warranted, and articulate her reasoning.  The parties will have an opportunity on remand to present evidence relevant to an evaluation of the respondent's competency and any other appropriate issues.

**ORDER:**  The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.