# Matter of E-S-I-, Respondent

*Decided June 21, 2013*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  Where the indicia of a respondent's incompetency are manifest, the Department of Homeland Security ("DHS") should serve the notice to appear on three individuals: (1) a person with whom the respondent resides, who, when the respondent is detained in a penal or mental institution, will be someone in a position of demonstrated authority in the institution or his or her delegate and, when the respondent is not detained, will be a responsible party in the household, if available; (2) whenever applicable or possible, a relative, guardian, or person similarly close to the respondent; and (3) in most cases, the respondent.

(2)   If the DHS did not properly serve the respondent where indicia of incompetency were either manifest or arose at a master calendar hearing that was held shortly after service of the notice to appear, the Immigration Judge should grant a continuance to give the DHS time to effect proper service.

(3)   If indicia of incompetency become manifest at a later point in the proceedings and the Immigration Judge determines that safeguards are needed, he or she should evaluate the benefit of re-serving the notice to appear in accordance with 8 C.F.R. §§ 103.8(c)(2)(i) and (ii) (2013) as a safeguard.

FOR RESPONDENT: Walter H. Ruehle, Esquire, Rochester, New York

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Amelia C. Anderson, Assistant Chief Counsel

AMICI CURIAE:   Steven H. Schulman, Esquire; Michael M. Hethmon, Esquire, Washington, D.C.[1]

BEFORE:  Board Panel:  NEAL, Chairman; GREER, Board Member; KENDALL CLARK, Temporary Board Member.

GREER, Board Member:

In a decision dated December 7, 2011, an Immigration Judge found that the Department of Homeland Security ("DHS") had not properly served the respondent with a notice to appear and that the respondent lacked

---

[1] During the pendency of the appeal, we requested supplemental and amicus briefing to address issues relating to the service of a notice to appear on mentally incompetent aliens. We acknowledge and appreciate the briefs submitted by the parties and amici curiae.

competency to participate in the hearing.  The Immigration Judge therefore terminated the proceedings.  The DHS has appealed from that decision.

This case addresses the requirements for the DHS's service of a notice to appear on individuals who lack mental competency.  We conclude that the DHS has not established that the respondent was served in accordance with the standards we now set forth.  We will therefore remand the record to allow the Immigration Judge to apply the regulations in compliance with our newly articulated interpretation of the regulations.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Nigeria who was admitted to the United States as a lawful permanent resident on October 22, 1980. On January 13, 2009, the DHS issued a notice to appear, charging the respondent with removability under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (2006), as an alien convicted of an aggravated felony defined in section 101(a)(43)(A) of the Act, 8 U.S.C. § 1101(a)(43)(A) (2006).  On September 9, 2010, the Immigration Judge found that the DHS had not properly served the respondent with the notice to appear and terminated the proceedings without prejudice.  The DHS appealed that decision, and on March 7, 2011, we dismissed the appeal and affirmed the Immigration Judge's decision. We concluded that because the respondent had been transferred into DHS custody from a psychiatric hospital, the DHS knew at the time it issued the notice to appear that the respondent had mental health issues, but it did not comply with the regulatory requirements for serving the notice to appear.

On March 11, 2011, the DHS issued a new notice to appear, and on December 7, 2011, the Immigration Judge terminated proceedings with prejudice, in part because the DHS again did not properly serve the respondent.  The Immigration Judge found that the respondent lacked the requisite competency to participate in immigration proceedings and that the DHS had not served the respondent in conformance with the regulatory requirements for serving persons who lack competency.

On appeal, the DHS argues that the Otay Mesa Detention Facility, where the respondent was confined at the time the notice to appear was served, was not a "penal or mental institution or hospital" and that service of the notice to appear pursuant to 8 C.F.R. § 103.8(c)(2)(i) was therefore not required.[2]  The DHS argues that service was required, instead, pursuant

---

[2]  The Immigration Judge and the parties have referred to 8 C.F.R. § 103.5a, the regulation that was in effect at the time of the hearing, but which was recently redesignated as 8 C.F.R. § 103.8.  *See* Immigration Benefits Business Transformation,

(continued . . .)

to 8 C.F.R. § 103.8(c)(2)(ii) and that it satisfied the requirements of that regulation by serving the Assistant Officer in Charge/Supervisory Detention and Deportation at the Otay Mesa Detention Facility and an individual who it contends is the respondent's cousin.

The respondent argues that the Immigration Judge properly terminated proceedings for lack of proper service because the DHS did not comply with either 8 C.F.R. § 103.8(c)(2)(i) or (ii) (2013). Specifically, the respondent contends that he was confined and therefore the warden of the detention center where he was confined should have been served. The respondent also asserts that the DHS failed to serve a "person with whom [he] resides," as is required by 8 C.F.R. § 103.8(c)(2)(ii).

## II. ISSUE

The issue in this case is whether the DHS's service of the notice to appear on the respondent met the requirements for proper service on individuals who lack mental competency.[3]

## III. STATUTORY AND REGULATORY AUTHORITY

The DHS initiates removal proceedings by serving written notice—the notice to appear—on a respondent. Section 239(a) of the Act, 8 U.S.C. § 1229(a) (2006); 8 C.F.R. § 1003.14(a) (2013). The notice to appear includes such information as the nature of the proceedings and the charges of removability, and it notifies the respondent of both the right to be represented by counsel and the obligation to keep the court informed of the respondent's address. Section 239(a)(1) of the Act.

The regulations provide further guidance about the service of documents such as the notice to appear on persons who lack mental competency. *See generally Matter of M-A-M-*, 25 I&N Dec. 474, 478 (BIA 2011). Specifically, under the regulations, the manner of service of persons who lack mental competency turns on whether or not they are confined.

> *Persons confined, minors, and incompetents*—(i) *Persons confined.* If a person is confined in a penal or mental institution or hospital and is competent to understand the nature of the proceedings initiated against him, service shall be made both upon him and upon the person in charge of the institution or the hospital. If the confined person is not competent to understand, service shall be made only on the person in

_____

Increment I, 76 Fed. Reg. 53,764, 53,781 (Aug. 29, 2011). In this decision we will refer to the current version of the regulations at 8 C.F.R. § 103.8.

[3] This decision addresses service only in the context of aliens who lack mental competency. It does not relate to or affect the current requirements and practices regarding service for other aliens in confinement.

charge of the institution or hospital in which he is confined, such service being deemed service on the confined person.

    (ii) *Incompetents and minors*. In case of mental incompetency, whether or not confined in an institution, and in the case of a minor under 14 years of age, service shall be made upon the person with whom the incompetent or the minor resides; whenever possible, service shall also be made on the near relative, guardian, committee, or friend.

8  C.F.R. § 103.8(c)(2).

## IV.  ANALYSIS

### A.  Service on Mentally Incompetent Persons Who Are Confined in a Penal or Mental Institution

    We first consider appropriate service on incompetent persons who are confined in a penal or mental institution or hospital.  The regulation provides that "[i]f the confined person is *not* competent to understand, service shall be made only on the person in charge of the institution or the hospital in which he is confined, such service being deemed service on the confined person."  8 C.F.R. § 103.8(c)(2)(i) (emphasis added).

    "When interpreting statutes and regulations, we look first to the plain meaning of the language and are required to give effect to unambiguously expressed intent."  *Matter of Figueroa*, 25 I&N Dec. 596, 598 (BIA 2011); *see also McNeill v. United States*, 131 S. Ct. 2218, 2221 (2011); *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984); *Matter of F-P-R-*, 24 I&N Dec. 681, 683 (BIA 2008).  Intent is presumed to be expressed by the ordinary meaning of the words used.  *Matter of Figueroa*, 25 I&N Dec. at 598; *see also INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987).  We also construe a statute or regulation to give effect to all of its provisions.  *Matter of E-L-H-*, 23 I&N Dec. 814, 823 (BIA 2005); *Matter of Masri*, 22 I&N Dec. 1145, 1148 (BIA 1999).  However, the regulation that specifically addresses the issue at hand is controlling. *Matter of Cubor*, 25 I&N Dec. 470 (BIA 2011).

    In this case, we find no ambiguity in the requirement of 8 C.F.R. § 103.8(c)(2)(i) that if a respondent is confined, the person in charge of the institution must be served.  The term "in charge" describes the head of the institution or, at a minimum, a person of authority in the institution who has jurisdiction over the detention of the respondent.  We agree with the DHS that in order to determine the appropriate person to serve, it may have to consider the relevant Federal statute, regulation, or other authority that authorizes a particular official to be the legal custodian for the incompetent individual in his or her care.  In a penal institution, the person in charge of the prison is the head official, whether known as the warden,

superintendent, or sheriff or by some other title.  In the context of a mental institution, we understand this person to be the head official in charge of the hospital, whether known as Director, Chief Executive Officer, or Chief Administrator or by some other title.  We also recognize that the person in charge may delegate the authority to accept service of the notice to appear to other officials at the institution.  *See generally Matter of Casillas-Topete*, 25 I&N Dec. 317, 321 (BIA 2012).

We understand that the parties disagree about the meaning of the term "penal" and whether detention in DHS custody constitutes detention in a "penal" institution.  We have generally held that detention in the immigration context is not punitive.  *Matter of Valdez*, 21 I&N Dec. 703, 712 (BIA 1997) ("The civil immigration detention of criminal aliens is not intended to 'punish' any past criminal conduct.").  The system of detention of criminal aliens is not uniform, however.  For example, some aliens are held in penal institutions such as State prisons or county jails pending their immigration proceedings, and some criminal aliens are served with the notice to appear while serving their criminal sentences in a penal institution.

We need not resolve whether all immigration custody arrangements are "penal," however, because, as we discuss below, for all persons who lack mental competency and are in a custodial setting of any type, we hold that a person of authority in the institution or his delegate must be served.  *See* 8 C.F.R. § 103.8(c)(2)(i)–(ii).  In other words, a determination whether the respondent's confinement is in a "penal" institution does not alter whether a person of authority in the place of detention must be served.  A focus on the fact of confinement, rather than on the nature of the institution, is a uniform approach that avoids potential unfairness from different methods of service for confined aliens who lack competency.

In addition, although the regulation indicates that a person who is "not competent to understand" need not be served, in most cases it will be difficult to ascertain whether the respondent is competent to understand the notice to appear until an attempt is made to serve it, or frequently later.  8 C.F.R. § 103.8(c)(2)(i).  Therefore, in nearly all cases the prudent course of action will be for the DHS to serve the respondent along with the head of the institution.

### B.  Service on All Mentally Incompetent Persons, Whether or Not Confined

The regulations also contain a provision for the service of all persons who lack competency, "whether or not [they are] confined in an institution." 8 C.F.R. § 103.8(c)(2)(ii).  Service on all persons who are mentally incompetent "shall be made upon the person with whom the incompetent or

the minor resides; whenever possible, service shall also be made on the near relative, guardian, committee, or friend." *Id.*[4]

The phrase "whether or not confined in an institution" is broad enough to encompass all persons who lack competency, whether they are detained in a penal or mental institution, are in DHS custody, or reside in their own homes or elsewhere. This provision applies to all mentally incompetent aliens, then, even if service is also required on the "person in charge" of a penal or mental institution in accordance with 8 C.F.R. § 103.8(c)(2)(i).

When an alien is detained, his or her place of residence is "the particular setting in which he is detained." *Matter of Amaya*, 21 I&N Dec. 583, 584 (BIA 1996). In a custodial setting, the appropriate "person with whom the incompetent . . . resides" is someone in a position of authority, not merely another resident of the institution. *See* 8 C.F.R. § 103.8(c)(2)(ii). Therefore, if an alien is detained—in DHS custody or in any other type of institution—service on the head of the institution or his or her delegate satisfies the regulation. *See, e.g.*, *Matter of Amaya*, 21 I&N Dec. at 584 (finding that when the DHS served the notice to appear on the director of an International Emergency Shelter at which the respondent was housed, it complied with former 8 C.F.R. § 103.5a(c)(2)(ii) (1996), the predecessor to 8 C.F.R. § 103.8(c)(2)(ii), which required the DHS to serve a person with whom the minor resides); *see also Matter of Casillas-Topete*, 25 I&N Dec. at 321 (recognizing that under the Act, authority is delegated to appropriate immigration officials acting on behalf of the Attorney General or the Secretary of the DHS). As with service in a penal or medical institution, appropriate service is on the person in charge of the institution, such as the warden or director of the detention center, or his delegate.

The DHS argues that the appropriate person on whom to serve the notice to appear is the Field Office Director, the DHS official who has legal authority over all detainees in the immigration system, whether they are detained in facilities operated by the DHS itself or by private entities or local governments. The Field Office Director is not generally located at DHS detention facilities, however, and therefore cannot fairly be considered to be a "person with whom the incompetent . . . resides."

---

[4] The term "committee" is not defined in 8 C.F.R. § 103.8(c)(2)(ii). The regulations relating to service on minors, incompetents, and confined persons were initially promulgated in June 1972. *See* Uniform Service of Process, 37 Fed. Reg. 11,469, 11,469–70 (June 8, 1972) (codified at 8 C.F.R. § 103.5a(c)(2)). At the time the regulation was issued, a "committee" was defined as a "person, or an assembly or board of persons, to whom the consideration, determination, or management of any matter is committed or referred, as by a court." *Black's Law Dictionary* 341 (4th ed. 1968). *Black's* further indicated that the term is especially used in the context of guardianship. *Id.* at 342.

8 C.F.R. § 103.8(c)(2)(ii).  Of course, the DHS is free to send a copy of the notice to appear to the appropriate Field Office Director.

Both 8 C.F.R. §§ 103.8(c)(2)(i) and (ii) require that when an alien is confined—whether in a penal institution, a mental institution, or any other type of detention facility—a person of authority in the institution or his delegate must be served, in addition to the respondent.  For aliens who are not detained, service upon a "person with whom the [alien] resides" must also involve service on a responsible party, that is, it cannot be a minor or another person who lacks competency.  *See, e.g.*, *Matter of Mejia-Andino,* 23 I&N Dec. 533 (BIA 2002) (upholding termination of proceedings because the minor respondent's parents had not been served with the notice to appear); *see also Gonzalez v. Reno*, 212 F.3d 1338, 1349–51 (11th Cir. 2000) (deferring to a determination by the legacy Immigration and Naturalization Service that minors must be represented by an adult in immigration matters), *cert. denied*, 530 U.S. 1270 (2000).

Our approach of serving the notice to appear on the head of the institution in which the respondent is detained or on a responsible person with whom the respondent resides furthers the purpose of the regulation, whose service requirement we have held (in the context of minors) is "to direct service of the charging document 'upon the person . . . most likely to be responsible for ensuring that an alien appears before the Immigration Court at the scheduled time.'"  *Matter of Mejia-Andino*, 23 I&N Dec. at 536 (quoting *Matter of Amaya*, 21 I&N Dec. at 585); *accord Nolasco v. Holder*, 637 F.3d 159, 164 (2d Cir. 2011) (determining that the DHS's failure to serve a minor respondent's family in accordance with former 8 C.F.R. § 103.5a(c)(2)(ii) did not violate due process where the respondent received the notice to appear, appeared at the hearing with her parents and counsel, and pled to the charges).

Service on a responsible person in mental competency cases also helps the DHS and the Immigration Court identify someone who can assist the respondent so that proceedings can go forward.  *See, e.g.*, 8 C.F.R. § 1240.10(c) (2013) ("The [I]mmigration [J]udge shall not accept an admission of removability from an unrepresented respondent who is incompetent . . . and is not accompanied by an attorney or legal representative, a near relative, legal guardian, or friend; nor from an officer of an institution in which a respondent is an inmate or patient.")

In addition, for *all* respondents who lack mental competency—whether detained or not—service shall also be made, whenever possible, on the near relative, guardian, committee, or friend.  8 C.F.R. § 103.8(c)(2)(ii).  Given the nature of the cases in which competency is an issue, some respondents will have court-appointed guardians at the time their notice to appear is issued.   When the DHS is preparing to serve a respondent with identified competency issues, the DHS should inquire whether there is a

court-appointed guardian, particularly if there is an indication that the respondent has come from a mental institution.  Whenever the DHS learns that a respondent has a court-appointed guardian, the DHS should serve that guardian, in addition to anyone else served.

Where the respondent is not confined, serving someone close to the respondent helps ensure that the respondent will appear for the scheduled hearing.  *Matter of Gomez-Gomez*, 23 I&N Dec. 522, 528 (BIA 2002) ("[A]n adult relative who receives notice on behalf of a minor alien bears the responsibility to assure that the minor appears for the hearing."). In addition, where a respondent lacks competency, the family member or friend may be able to help the respondent communicate with the Immigration Court and counsel and may be able to provide relevant information regarding alienage, date of entry, removability, and eligibility for relief.

The DHS will often have background information about the respondent, including criminal or health records, prior addresses, and information about family members, that will assist the DHS in making every possible effort to locate family members or others close to the respondent to accomplish this service.  In addition, the DHS should demonstrate to the Immigration Court the connection between the respondent and the person who is served. *See, e.g.*, *Matter of Mejia-Andino*, 23 I&N Dec. at 536 (terminating proceedings where the DHS claimed to have served the minor respondent's uncle but there was insufficient evidence that the adult in question was, in fact, the respondent's uncle, and the respondent's parents were apparently in the United States).

We recognize that most respondents will not be represented until after the DHS serves the notice to appear, but there will be some respondents who do have counsel at the time the notice to appear is issued.  Although not specified in the regulations regarding incompetency, as with all respondents, if an alien is represented, notice must be served on counsel. *See* section 240(b)(5)(A) of the Act, 8 U.S.C. § 1229a(b)(5)(A) (2006); 8 C.F.R. § 1003.26(c)(2) (2013); *see also Matter of Barocio*, 19 I&N Dec. 255 (BIA 1985) (holding that notice to an alien's counsel constitutes notice to the alien); 8 C.F.R. § 1292.5(a) (2013).  Nonetheless, while notice to counsel ordinarily constitutes notice to the alien, the regulation governing service on aliens who lack competency requires service on a responsible party with whom the respondent resides.   8 C.F.R. § 103.8(c)(2)(ii). Therefore, in these cases, service on counsel does not obviate the need to also serve a responsible person with whom the respondent resides.

### C.  Timing of Service of the Notice To Appear

In some cases, the DHS will know at the time that it issues the notice to appear whether the respondent's case involved potential mental competency issues, particularly in a detained setting.  The Public Health Service regulations and the DHS's Operations Manual for detention standards set out guidelines for the screening, diagnosis, and treatment of detainees with mental illnesses.  *See* 42 C.F.R § 34.7 (2012); DHS, ICE, *2011 Operations Manual ICE Performance-Based National Detention Standards (PBNDS)*, Part 4.3, Medical Care (revised 2013), http://www.ice.gov/detention-standards/2011.

We recognize, however, that the DHS is often not able to determine at the time that it serves the notice to appear whether the respondent's case is a "case of mental incompetency."  8 C.F.R. § 103.8(c)(2)(ii).  A determination whether a respondent actually lacks competency will ultimately be made by the Immigration Judge during proceedings. *See generally Matter of M-A-M-*, 25 I&N Dec. 474.  But where the DHS is aware of indicia of incompetency at the time it serves the notice to appear, the case should be handled as "a case of mental incompetency," and the respondent should be served in accordance with 8 C.F.R. §§ 103.8(c)(2)(i) and (ii).

Although the DHS is not making a competency determination, competency issues may be manifest at the time the notice to appear is served.  For example, in cases such as this, where the respondent was transferred into DHS custody from a psychiatric hospital, or in those where a detained respondent has a known history of mental illness, the case should be treated as one of "mental incompetency" for purposes of service.

### D.  Competency Issues Manifest After Service of the Notice To Appear

Mental competency is a variable condition.  *Matter of M-A-M-*, 25 I&N Dec. at 480.  Thus, the longer the period of time that has elapsed since service of the notice to appear, the more difficult it becomes to gauge whether an individual was competent at the time of service.  If, at a master calendar hearing held shortly after service of the notice to appear, the Immigration Judge determines that an alien is not competent or identifies sufficient indicia of incompetency to warrant handling the case under 8 C.F.R. §§ 103.8(c)(2)(i) and (ii), the DHS should be granted a continuance to serve the notice to appear in accordance with those regulations and this decision.

On the other hand, competency concerns frequently arise subsequent to a master calendar hearing that was scheduled soon after the notice to appear was served.  In this case, if the Immigration Judge determines that the

respondent is not sufficiently competent to proceed without safeguards, he or she should consider whether a new service of the notice to appear pursuant to 8 C.F.R. §§ 103.8(c)(2)(i) and (ii) would be among the safeguards needed for the case to proceed. If so, the Immigration Judge should grant the DHS a continuance for that purpose, which could coincide with the interval before the next scheduled hearing.

## E.  Summary

Where the indicia of a respondent's incompetency are manifest, the DHS should serve the notice to appear on three individuals:  (1) a person with whom the respondent resides, who, when the respondent is detained in a penal or mental institution, will be someone in a position of demonstrated authority in the institution or his or her delegate and, when the respondent is not detained, will be a responsible party in the household, if available; (2) whenever applicable or possible, a relative, guardian, or person similarly close to the respondent; and (3) in most cases, the respondent.

If the DHS did not properly serve the respondent where indicia of incompetency were either manifest or arose during a master calendar hearing that was held shortly after service of the notice to appear, the Immigration Judge should grant a continuance to give the DHS time to effect proper service.  If indicia of incompetency become manifest at a later point in the proceedings and the Immigration Judge determines that safeguards are needed, he or she should evaluate the benefit of re-serving the notice to appear in accordance with 8 C.F.R. §§ 103.8(c)(2)(i) and (ii) as a safeguard.

## F.  Application of the Regulations to the Respondent's Case

Applying the regulations to the circumstances of this case, we find that it is unclear whether the regulatory requirements have been satisfied.  Here, the DHS was aware of indicia of incompetency because the respondent had been transferred into DHS custody from a psychiatric hospital.  Since the respondent is detained, the notice to appear should have been served on the respondent (or counsel, if he was represented), a person of authority in the detention center, and, if possible, a near relative, guardian, committee, or friend.

The DHS served the March 11, 2011, notice to appear on three parties: the respondent, who refused to sign; an Immigration and Customs Enforcement officer at the Corrections Corporations of America in East Mesa, California, the facility in which the respondent is detained; and an individual who the DHS claims is the respondent's cousin.  The DHS indicates that it served the Assistant Officer in Charge/Supervisory

Detention and Deportation at the Otay Mesa Detention Facility as "the person in charge of the institution," although the identity of the person served is not apparent from the notice to appear itself.  8 C.F.R. § 103.8(c)(2)(i).  The Immigration Judge found that the Assistant Officer in Charge was not the appropriate person to serve and that the warden of the facility should have been served instead.

The record lacks evidence regarding the chain of command and the functions and authorities of the Assistant Officer in Charge at the Otay Mesa Detention Facility.  The record does not establish that the Assistant Officer in Charge is in the chain of authority for the detention center and has responsibility for detainees at the center.

The DHS also indicates that it sent a copy of the notice to appear to the respondent's cousin, but we find insufficient evidence in the record to establish that the individual in question is, in fact, the respondent's cousin or "near relative" under 8 C.F.R. § 103.8(c)(2) or that he was properly served in accordance with 8 C.F.R. § 103.8(a)(2).  *See Matter of Mejia-Andino*, 23 I&N Dec. at 536 n.5 (expressing concerns about the reliability of a summary conclusion on the Form I-213 (Record of Deportable/Inadmissible Alien) that an adult who accompanied the minor respondent was her uncle).

## V.  CONCLUSION

The DHS has not shown that the requirements of the regulations have been satisfied under our interpretation of the governing regulations. Accordingly, we find that remand is warranted for the Immigration Judge to apply our guidance in the first instance.[5]  On remand, the parties will have the opportunity to submit additional evidence to establish whether the service of the notice to appear satisfies the regulation as interpreted in this decision.  If necessary, the Immigration Judge should grant the DHS a continuance to properly serve the respondent.

**ORDER:**  The decision of the Immigration Judge is vacated, and the removal proceedings are reinstated.

**FURTHER ORDER:**  The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

---

[5] The Immigration Judge also terminated the proceedings because he found that the respondent could not represent himself and had not been afforded sufficient assistance. Since we are remanding the record for the Immigration Judge to apply our new guidance regarding service of the notice to appear, we will not now consider whether the respondent needed representation or assistance at the prior hearing.