**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



**FILED**

APR 20 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| VERONICA FLOR RICO-LANDAVERDE, <br><br> Petitioner, <br><br> v. <br><br> ERIC H. HOLDER, Jr., Attorney General, <br><br> Respondent. | No. 14-70779 <br><br> Agency No. A076-635-677 <br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 8, 2015
Pasadena, California

Before: SILVERMAN and BEA, Circuit Judges and DONATO,[**] District Judge.

Veronica Flor Rico-Landaverde petitions for review of the Board of

Immigration Appeal's dismissal of her appeal from the Immigration Judge's final

---

[*]   This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]   The Honorable James Donato, District Judge for the U.S. District Court for the Northern District of California, sitting by designation.

order of removal.  Except as noted below, we have jurisdiction pursuant to 8 U.S.C. § 1252.  We **DISMISS IN PART** and **DENY IN PART** the petition.

The court lacks jurisdiction to consider Rico-Landaverde's argument that the IJ erred in finding her asylum application untimely.  Rico-Landaverde argues that the IJ should have considered whether her depression prevented her from complying with the one-year deadline, but she did not raise this argument before the BIA.[1]  8 U.S.C. § 1252(d)(1); *Barron v. Ashcroft*, 358 F.3d 674, 677-78 (9th Cir. 2004).  The court also lacks jurisdiction to consider the unexhausted question of whether Rico-Landaverde's due process rights were violated when the IJ failed to inform her of her apparent eligibility for a U Visa.[2]  *Brezilien v. Holder*, 569 F.3d 403, 412 (9th Cir. 2009); *Tall v. Mukasey*, 517 F.3d 1115, 1120 (9th Cir. 2008); *Barron*, 358 F.3d at 678.  These aspects of the petition are dismissed.

---

[1]The IJ denied Rico-Landaverde's applications for withholding of removal and protection under the Convention Against Torture on the merits, but Rico-Landaverde explicitly abandoned those applications in her petition for review.

[2]*United States v. Ubaldo-Figueroa*, 364 F.3d 1042 (9th Cir. 2004), upon which Rico-Landaverde relies to contend the exhaustion requirement does not apply to failure-to-inform challenges on direct review of a removal order, is inapposite.  That case addresses the exhaustion requirement of 8 U.S.C. § 1326(d), which allows for *collateral* review of a deportation order as a defense to an illegal reentry charge.  *Id.* at 1048-50.

Rico-Landaverde's argument that her conviction for endangerment under A.R.S. § 13-1201 is not a crime involving moral turpitude, rendering her removable, is foreclosed by *Leal v. Holder*, 771 F.3d 1140 (9th Cir. 2014). Even if her conviction were not a CIMT, Rico-Landaverde is removable because she is present in the United States without having been admitted or paroled after inspection. 8 U.S.C. §§ 1182(a)(6)(A)(1), 1227(a)(1). She does not challenge the IJ's finding of removability on that basis. This aspect of her petition is therefore denied.

Finally, the court also denies Rico-Landaverde's petition to the extent it argues the IJ improperly applied *Matter of M-A-M-*, 25 I. & N. Dec. 474 (BIA 2011). The record before the IJ showed nothing more than that Rico-Landaverde had been treated for depression in the past. Even assuming for the sake of argument that this history should have triggered further inquiry into Rico-Landaverde's mental competency under *M-A-M-*, the IJ's explicit findings that Rico-Landaverde was competent were amply based upon the record evidence as well as Rico-Landaverde's appropriate behavior in court, her ability to file a pro se asylum application and call the appropriate witnesses to testify, and her lucid and appropriate interactions with the IJ over the course of five hearings that spanned three-and-a-half months. While we stress that *M-A-M-*'s "further inquiry"

requirement no doubt requires IJs to undertake more than routine questioning before making a competency finding when faced with concrete indicia of incompetency, we conclude that under the particular facts of this case, the IJ's inquiry into Rico-Landaverde's competency was sufficient.

We also note that Rico-Landaverde does not argue that she was *actually* incompetent, and we further note that she opposed amici's recommendation that we remand her petition so that she could take advantage of the unarguably much stronger protections provided to supposedly pro se mentally ill detainee classmembers under the permanent injunction in *Franco-Gonzalez v. Holder*, Case No. CV-10-02211 DMG (DTBx), 2014 WL 5475097 (C.D. Cal. Oct. 29, 2014).

**PETITION FOR REVIEW DISMISSED IN PART; DENIED IN PART.**

**Rico-Landaverde v Eric Holder 14-70779**

Bea, J., concurring in part and dissenting in part.

I agree with the majority that we lack jurisdiction over petitioner Veronica Flor Rico-Landaverde's claim that the IJ erred in finding her application for asylum untimely. And I also agree that our caselaw forecloses her argument that her conviction for endangerment is not a crime involving moral turpitude. But because I conclude that the IJ did not correctly apply the framework for determining competency set out in *Matter of M-A-M-*, 25 I. & N. Dec. 474 (BIA 2011), I think we should send the case back so the agency can apply its own binding precedent. And so, I respectfully dissent.

In *Matter of M-A-M-*, the Board of Immigration Appeals (BIA) announced the test for determining whether an alien is competent and set out a legal framework for making that determination. 25 I. & N. Dec. at 479–484. The BIA summarized its decision as follows:

> [I]f there are no indicia of incompetency in an alien's case, no further inquiry regarding competency is required. The test for determining whether an alien is competent to participate in immigration proceedings is whether he or she has a rational and factual understanding of the nature and object of the proceedings, can consult with the attorney or representative if there is one, and has a reasonable opportunity to examine and present evidence and cross-examine witnesses. If there are indicia of incompetency, the Immigration Judge must make further inquiry to determine whether the alien is competent for purposes of immigration proceedings. If the alien lacks sufficient competency to proceed, the Immigration Judge will evaluate and apply appropriate

1

safeguards. The Immigration Judge must articulate the rationale for his or her decision.

*Id.* at 484.

Under the framework articulated in *Matter of M-A-M-*, respondents in immigration proceedings are presumed to be competent, and if there are no indicia of incompetency in a case, no further inquiry regarding competency is required. But where indicia of incompetency exist, the IJ "*must make further inquiry* to determine whether the alien is competent for purposes of immigration proceedings." *Matter of M-A-M-*, 25 I. & N. Dec. at 484 (emphasis added).

Here, there were sufficient indicia of incompetency before the IJ. Prior to Rico's hearing, counsel for the Executive Office of Immigration Review (EOIR) submitted to the IJ a notice of Rico's possible class membership in an action pending in the Central District of California challenging the standards for competency in immigration courts. EOIR informed the IJ Rico "ha[d] been diagnosed with Depression (Adjustment Disorder with Anxiety)" and that she may be "entitled to certain procedural protections" if she remains unrepresented. The notice then reminded the IJ that he should follow the *Matter of M-A-M-* framework to determine whether Rico was indeed competent. Aside from the class notice, the record included a probation-violation report, which noted that Rico "has physical and mental health concerns" and "admits to suffering from mental health issues and states she has thought about harming herself recently." The record also

2

reflects more oblique indications of mental issues, such as her recurring problems with alcohol abuse, her multiple arrests for drunk driving, and her difficulty providing for herself and her eight American-citizen children. Taken together, I believe these indicia were sufficient to trigger the IJ's duty under *Matter of M-A-M-* to inquire further into Rico's competency. That the IJ did not do.

The majority and I agree that *Matter of M-A-M-*'s "further inquiry" requires IJs to undertake more than routine questioning before making a competency finding when faced with indicia of competency. But I cannot agree that the IJ's questions to Rico were anything more than business as usual. At no time did the IJ inquire into Rico's mental state, her mental-illness diagnosis, her problems with substance abuse, her treatment or any medications she was taking, or whether she was being treated while in detention. *See id.* at 480 ("The inquiries made should include questions about . . . the respondent's state of mind."); *see also id.* at 480–81 (suggesting measures that an IJ could take to assess alien's competency, including "ask[ing] the respondent whether he or she currently takes or has taken medication to treat a mental illness and what the purpose and effects of that medication are").

Because the IJ failed to make the further inquiry required by *Matter of M-A-M-*, I would remand to the agency so that it can properly apply its own

precedent in the first instance.  *See Azanor v. Ashcroft*, 364 F.3d 1013, 1020–21

(9th Cir. 2004).  I respectfully dissent.