**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 4 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ALEXANDRE EFIMOV,

Petitioner,

v.

JOHN ASHCROFT, Attorney General
of the United States,

Respondent.

No. 03-9509

(Board of Immigration Appeals)

(BIA No. A70 662 019)

**ORDER AND JUDGMENT** *

Before **SEYMOUR** , **HENRY** , and **McCONNELL** , Circuit Judges.

Petitioner Alexandre Efimov is a native and citizen of Russia. His petition

seeks review of an order of the Board of Immigration Appeals (BIA) affirming an

Immigration Judge's decision denying his application for asylum, withholding of

removal, and withholding of deportation under the Convention Against Torture.

We deny the petition and affirm.

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I. BACKGROUND

Mr. Efimov came to the United States from Russia in 1992. His non-immigrant visitor's visa authorized him to remain in the United States until November 20, 1992. Mr. Efimov remained beyond that date. He filed an asylum application in January, 1994. Eventually, the application came before an Immigration Judge (IJ) in Denver, Colorado. On June 18, 2001, Mr. Efimov appeared before the IJ to offer testimony in support of his asylum application. Mr. Efimov testified to the following facts:

During the Soviet era, Mr. Efimov worked in Moscow as a manager of a high-end Turkmenian restaurant. In 1991, the restaurant was privatized, and Mr. Efimov and five other men became the sole owners of the restaurant. Mr. Efimov served as "commercial director" of the new enterprise. Soon after the privatization, a man claiming to be a KGB officer visited Mr. Efimov's restaurant. The supposed KGB man asked about the relative success of the restaurant's business and explained that his friends would soon be visiting the restaurant and that Mr. Efimov would be expected to comply with their requests. Later that month, a gang of Chechens came to the restaurant and ordered Mr. Efimov to sign over to them the ownership documents of the restaurant. Mr. Efimov refused. The gang threatened to inflict severe injuries on Mr. Efimov and on his wife and child if he persisted in his refusal, and then left.

The gang returned a week later. Mr. Efimov again refused to transfer the restaurant to them. The enraged Chechens pushed Mr. Efimov down a flight of stairs. Mr. Efimov suffered back and elbow injuries from the fall and spent ten days in the hospital. A police investigator visited Mr. Efimov at the hospital. Mr. Efimov did not cooperate with the police investigation because in his experience the police were highly ineffectual, and he feared the gang would make things even worse if the police became involved.

After Mr. Efimov returned from the hospital, he received several threatening phone calls from the Chechen criminals. The next time the gang showed up at the restaurant, they seized Mr. Efimov and forced him into a car. They took Mr. Efimov outside of Moscow and into the dingy basement of a remote house. In the basement, Mr. Efimov saw another victim of the gang's brutality, bound hand and foot and covered with blood. The criminals showed Mr. Efimov how they planned to execute the man with electrical rods attached to his mouth and genitals. They explained that Mr. Efimov would face a similar end if he continued to refuse their demands to hand over the restaurant and pay a $25,000 "fine." After beating Mr. Efimov with their rifle butts, gang members drove him to a remote area and left him there.

Mr. Efimov then decided that enough was enough, and he told his business partners that he was resigning as director. He also relinquished his ownership

stake in the restaurant. He and his family fled Moscow to live 200 miles away with his great-grandmother. Shortly afterward, Mr. Efimov came to the United States.

At the hearing before the IJ, the INS introduced documents showing that Mr. Efimov had twice been convicted in state court for shoplifting offenses. Mr. Efimov testified that he was actually innocent on both occasions. When asked why he had pled guilty, Mr. Efimov explained that on one occasion he pled guilty on the advice of counsel in order to avoid jail time and the other guilty plea was mistakenly entered by the court when Mr. Efimov nodded his head in response to a question he had not clearly understood.

The IJ ruled that Mr. Efimov had failed to establish eligibility for asylum, withholding of removal, or protection under the Convention Against Torture. The IJ determined that Mr. Efimov's testimony about his criminal history in the United States was not credible, that Mr. Efimov appeared willing to misrepresent the facts to advance his own interests, and that his testimony could not be accepted completely at face value. The IJ therefore concluded that Mr. Efimov's testimony was insufficient to meet his burden of proof. In the alternative, the judge also ruled that Mr. Efimov's claims failed because the persecution inflicted on Mr. Efimov was not based on any protected ground but was simply a protection racket whose purpose was only to make money for the gang. Finally,

because Mr. Efimov had long since given up his interest in the restaurant, the IJ found that Mr. Efimov had not shown a sufficient likelihood of persecution or torture upon his return to Russia to warrant asylum or withholding of removal.

Mr. Efimov appealed to the BIA. The BIA summarily affirmed the IJ's decision, without opinion, under new "streamlining" regulations permitting summary affirmances by a single member of the BIA. *See* 8 C.F.R. §1003.1(a)(7) & (e); *Yuk v. Ashcroft*, 355 F.3d 1222, 1228-29 (10th Cir. 2004). Mr. Efimov now appeals to this Court.

## II. DISCUSSION

### A. Standard of Review

"Where . . . the BIA summarily affirms or adopts an immigration judge's decision, this court reviews the judge's analysis as if it were the BIA's." *Tsevegmid v. Ashcroft*, 336 F.3d 1231, 1235 (10th Cir. 2003). Our standard of review is highly deferential: "We review the IJ's resolution of the initial refugee status question under a substantial evidence standard." *Yuk*, 355 F.3d at 1233. The IJ's adverse asylum decision "must be upheld if supported by reasonable, substantial and probative evidence on the record as a whole." *Krastev v. INS*, 292 F.3d 1268, 1275 (10th Cir. 2002). Our role is not to re-weigh the evidence or to evaluate witnesses' credibility. *Sviridov v. Ashcroft*, 358 F.3d 722, 727 (10th Cir. 2004). We will uphold the IJ's credibility determinations if they are

"substantially reasonable" and if the IJ provides "specific, cogent reasons" for disbelieving an alien's testimony. *Id*.

B. Applicable Standards

The Immigration and Nationality Act provides two possible modes of relief to an alien who fears persecution if he is returned to his country: asylum and withholding of removal. *Tsevegmid*, 336 F.3d at 1234. Asylum allows the alien to remain in this country; withholding of removal forbids removal of the alien to the country where persecution may occur. *See* 8 U.S.C. §§ 1158 & 1231(b)(3); *Tsevegmid*, 336 F.3d at 1234. Asylum is within the discretion of the Attorney General, while withholding of removal is granted to qualified aliens as a matter of right. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 424 (1987).

1. Asylum

To be eligible for a discretionary grant of asylum, an alien must first establish status as a refugee. *See* 8 U.S.C. § 1158(b)(1); *Krastev*, 292 F.3d at 1270. A refugee is any person outside the country of that person's nationality "who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

-6-

An alien can obtain refugee status by showing he either (1) "has a well-founded fear of future persecution," *Krastev*, 292 F.3d at 1270 (internal brackets omitted); (2) "has suffered past persecution, which gives rise to a [rebuttable] presumption [of] . . . a well-founded fear of future persecution," *id.*; or (3) has suffered "past persecution so severe as to demonstrate compelling reasons for being unwilling or unable to return" to his country of nationality, *id.* at 1271 (internal quotation marks omitted). An alien basing his asylum claim upon a well-founded fear of future persecution must show both a genuine, subjective fear of persecution, and "an objective basis by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear that the petitioner faces persecution." *Yuk*, 355 F.3d at 1233 (internal quotation marks omitted).

2. Withholding of Removal

A successful application for withholding of removal requires an alien to prove that his "life or freedom would be threatened in [his home] country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The Attorney General may not remove an alien if the alien establishes that he faces "a clear probability of persecution" in the country to which he would be returned. *Tsevegmid*, 336 F.3d at 1234. The standard of proof for withholding of removal is "more demanding than the well-founded fear standard applicable to an asylum claim." *Id.* (internal

quotation marks omitted).  Thus, when an applicant fails to establish the objective component of a well-founded fear of persecution, he necessarily fails to establish entitlement to withholding of removal.  *See Batalova v. Ashcroft,* 355 F.3d 1246, 1255 (10th Cir. 2004); *Yuk,* 355 F.3d at 1236.

### 3.  Convention Against Torture

The Convention Against Torture was implemented in the United States by the Foreign Affairs Reform and Restructuring Act of 1998.  *See Sviridov v. Ashcroft*, 358 F.3d 722, 724 n.2 (10th Cir. 2004).  "It permits withholding of removal for an alien who establishes that 'it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'"  *Id.* (quoting 8 C.F.R. § 208.16(c)(2)).  As defined in implementing regulations, "torture" is limited to acts "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity."  8 C.F.R. § 208.18(a)(1).  In order to establish a claim under the Convention Against Torture, an alien must show that it is more likely than not that he would be tortured by, or with the consent or acquiescence of, a government official should he return to his country of origin.

### C.  Petitioner's Challenges

### 1.  Lack of Explicit Credibility Finding

Mr. Efimov concedes that the IJ found certain aspects of his testimony to be incredible, and he does not challenge those findings on appeal. However, he argues that the adverse credibility finding was directed only to Mr. Efimov's testimony regarding his criminal history and not to the merits of his application for relief. Because the IJ relied on the lack of credible testimony as one of his grounds for denying asylum and withholding of removal, and, arguably, as the only ground for denying withholding under the Convention Against Torture, Mr. Efimov contends that the lack of a specific credibility finding related to the merits of his testimony requires reversal.[1]

Despite Mr. Efimov's contention, the IJ's credibility findings were not limited to his testimony about his shoplifting convictions. The IJ made it clear that he did not believe Mr. Efimov's story about the shoplifting convictions, but he also explained that Mr. Efimov's lack of candor regarding his criminal history affected the believability of the rest of his testimony:

---

[1]The government contends that we lack jurisdiction to consider the denial of Petitioner's claim under the Convention Against Torture on the ground that Petitioner failed to raise the issue in his appeal to the BIA. However, Petitioner's filing with the BIA squarely challenged the IJ's conclusion that Petitioner's testimony was insufficient to meet his burden of proof. A.R. 13. The IJ concluded that Petitioner's testimony was insufficient to meet the burden of proof on all his claims, including his claim under the Convention Against Torture. A.R. 24, 26. Petitioner's challenge to that conclusion was therefore sufficient to preserve his claim under the Convention Against Torture.

> The respondent's credibility of course is very important in assessing his asylum claim . . . . With respect to the respondent's claim to having suffered at the hands of criminal groups in Russia, this Court believes that the failure to testify credibly about criminal activity in the United States is an important negative factor with respect to credibility regarding the asylum claim.

A.R. 23-24. The IJ then cited other instances of Mr. Efimov's dishonesty, including contracting a "fake marriage" in Russia and failing to disclose criminal history on his asylum application. A.R. 24. The IJ concluded that Mr. Efimov seemed "willing to either embellish the true facts or actually engage in outright misrepresentations in order to advance his own interests." *Id*.

The IJ's opinion made it sufficiently clear that he not only thought that Mr. Efimov misrepresented his prior criminal history but that, based on that misrepresentation and on other instances of Mr. Efimov's past deceptive behavior, he chose not to give full credit to Mr. Efimov's account of persecution by the Chechen criminals. Mr. Efimov's testimony was by far the most important evidence offered in support of his claims for asylum and withholding of removal. While an alien's own testimony alone may be sufficient to establish a claim for asylum or withholding of removal, the IJ may deny the claim if he finds that the testimony is not credible and provides "specific, cogent reasons" for that finding. *Sviridov*, 358 F.3d at 727. In this case, the IJ's findings were sufficiently clear and reasonable to support his denial of asylum and withholding of removal. Therefore, the IJ's decision not to believe that testimony was not simply an

irrelevant aside, as Mr. Efimov claims, but rather was dispositive of Mr. Efimov's claims.

2.  Failure to Provide Notice of Briefing Schedule

Mr. Efimov argues that the BIA failed to provide notice to his counsel of its revised briefing schedule and that this failure constituted a violation of his due process rights.  Mr. Efimov's counsel did receive notice of the *initial* briefing schedule, which required filing a brief by February 14, 2002.  A.R. 6, 8.   On February 13, the day before the deadline, counsel filed a motion for extension of that deadline.  A.R. 6.  That motion was granted on February 19.  A.R. 4.  The Administrative Record contains a Notice indicating that the extension was granted and extending the deadline by 21 days.  *Id*.  Although the Notice contains, at the top, the addresses of counsel for both sides, Mr. Efimov's counsel claims he never received the document.

Assuming *arguendo* that responsibility for this mix-up lies with the BIA rather than with counsel, we think the Board has nevertheless complied with due process requirements.  The initial Notice, which Petitioner's counsel received, states: "The Board does not grant extensions for more than 21 days.  If your request is granted, the brief will generally be due 21 days from the date the initial briefing schedule expires . . ."  A.R. 9.  Thus, Petitioner's counsel was on notice, even without receiving the revised briefing schedule, that the due date would

probably be extended by exactly 21 days (which it was) and would certainly not be extended beyond that. In addition, the Notice refers to the BIA's Practice Manual, which explicitly allows a party to file a late brief along with a motion for consideration of the late brief explaining the circumstances that prevented filing of a timely brief. A.R. 4-5, 8; Board of Immigration Appeals, *Practice Manual* 29, *available at* <http://www.usdoj.gov/eoir/bia/qapracmanual/apptmtn4.htm>. Petitioner's counsel apparently never gave the BIA an opportunity to correct its oversight (if any) by filing such a motion. In this context, it makes no sense to allow a petitioner who fails to take advantage of the available procedures before the agency to turn around and claim on appeal that the agency has denied his due process rights.

3. Failure to Recognize "Entrepreneurs" as a Particular Social Group

Mr. Efimov's asylum claim required him to show that he suffered persecution on account of a protected ground, which includes membership in a particular social group. 8 U.S.C. § 1101(a)(42)(A). Mr. Efimov's theory is that the criminal gang persecuted him because he was an entrepreneur, which, in the context of newly post-Communist Russia, constituted a particular social group that was subjected to persecution. In his brief, Mr. Efimov characterizes the IJ's opinion as holding that "entrepreneurs" did not constitute a particular social group and that aliens could not claim asylum based on persecution for

membership in that group. He then argues at considerable length for the proposition that an asylum claim can be sustained based on persecution on the basis of one's status as an entrepreneur. Again, however, Petitioner misunderstands the IJ's opinion. The IJ did not conclude that "entrepreneurs" were not a "particular social group." Rather, the IJ's judgment was that Mr. Efimov was not persecuted because he was an entrepreneur or member of any group but simply because the gang wanted his property:

> [Mr. Efimov] urges the Court to find that [he] does belong to a group called "entrepreneurs" who are targeted for persecution by a group which the government is unwilling or unable to control. However, it does seem to me the respondent has been targeted, if at all, simply to obtain his money.

A.R. 25. The IJ is unquestionably correct that, if Mr. Efimov was the target of an ordinary criminal protection racket whose aim is simply to generate cash, then he has not established persecution based on a protected ground. *See Bradvica v. INS*, 128 F.3d 1009, 1013 (7th Cir. 1997) (generalized conditions of strife, including rampant crime, do not support asylum claims unless the victim has been singled out on account of a protected ground). The IJ's conclusion that Mr. Efimov was targeted solely for money is supported by substantial evidence, as Mr. Efimov himself said that the gang's purpose was to induce him to surrender his interest in the restaurant, A.R. 49, and Mr. Efimov provided no evidence that the Chechens were acting out of hatred toward entrepreneurs rather than love of money.

4. Failure to Comply with Streamlining Regulations

Mr. Efimov contends that the BIA failed to comply with its streamlining regulations, which permit summary affirmance by a single member of the BIA under certain circumstances.[2]   More specifically, the regulations permit summary affirmance by a single board member if the member determines that:

> the result reached in the decision under review was correct; that any errors in the decision under review were harmless or nonmaterial; and that
> (A) the issue on appeal is squarely controlled by existing Board or federal court precedent and does not involve the application of precedent to a novel fact situation; or
> (B) the factual and legal questions raised on appeal are so insubstantial that three-Member review is not warranted.

8 C.F.R. 1003.1(a)(7).  Put simply, the BIA should not summarily affirm if the IJ's opinion materially erred or if the appeal presents novel or substantial issues. Mr. Efimov does not argue that his appeal raises novel or substantial issues. Instead, Petitioner relies on his claim that the IJ did not reach the right result and that the errors in his opinion were not harmless or nonmaterial.  The alleged errors that Petitioner cites are the same errors discussed in subparts 2 and 3 above, namely, the lack of a specific credibility finding and the conclusion that entrepreneurs were not a particular social group.  As stated above, we conclude

---

[2]The government contends that the decision whether to streamline a case is committed to the absolute discretion of the BIA and therefore this Court lacks jurisdiction to review it.  Our recent decision in *Batalova* forecloses this argument.  *Batalova*, 355 F.3d at 1252-53.

that the IJ's decision on these two points was not erroneous and that therefore the IJ's decision reached the right result. It follows that the BIA's decision to summarily affirm did not violate the regulation.

Mr. Efimov also complains that the BIA "has failed miserably" because its summary affirmance "provide[s] absolutely no indication that a Board member actually reviewed the case." Petitioner's Br. 33. However, the regulations do not require the BIA to state that it has reviewed the record, and, absent any evidence to the contrary, we will presume that the BIA has properly done its job. *Batalova*, 355 F.3d at 1252; *Yuk,* 355 F.3d at 1232.

### III. Conclusion

We AFFIRM the decision of the BIA.

ENTERED FOR THE COURT

Michael W. McConnell
Circuit Judge