FILED
United States Court of Appeals
Tenth Circuit

January 10, 2022

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

NKEMCHAP NELVIS TAKWI,

    Petitioner,

v.

MERRICK B. GARLAND, United States
Attorney General,[*]

    Respondent.

No. 20-9595

_____

### PETITION FOR REVIEW OF AN ORDER FROM THE
### BOARD OF IMMIGRATION APPEALS
_____

Jesse Howard Witt of Frascona, Joiner, Goodman & Greenstein, Boulder, Colorado, for
Petitioner.

Sarah Pergolizzi, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S.
Department of Justice (Jeffrey Bossert Clark, Acting Assistant Attorney General, Civil
Division, John W. Blakeley, Assistant Director, Office of Immigration Litigation, with
her on the briefs), Washington, D.C., for Respondent.

_____

Before **McHUGH**, **MURPHY**, and **ROSSMAN**, Circuit Judges.
_____

**ROSSMAN**, Circuit Judge.

---

[*] On March 11, 2021, Merrick B. Garland became Attorney General of the
United States. Pursuant to Fed. R. App. P. 43(c)(2), he has been substituted for
Robert M. Wilkinson as the Respondent in this action.

_____

Nkemchap Nelvis Takwi seeks review of a decision by the Board of Immigration Appeals (BIA) dismissing his appeal from a removal order entered by an Immigration Judge (IJ) and denying his motion to remand. Exercising jurisdiction under 8 U.S.C. § 1252, we grant the petition for review. We remand this matter to the BIA because the IJ did not make an explicit adverse credibility determination, and the BIA did not afford Mr. Takwi the required rebuttable presumption of credibility.

## I.    Background

Mr. Takwi is a 36-year-old native and citizen of Cameroon. In August 2019, he came to the United States without authorization and claimed he would be persecuted if returned to Cameroon. An asylum officer conducted an interview and found Mr. Takwi had a "credible fear of persecution."[1] Shortly thereafter, the government charged Mr. Takwi as "subject to removal" because he was a noncitizen who attempted to enter the United States without valid entry documents. 8 U.S.C. § 1182(a)(7)(A)(i)(I). In removal proceedings, Mr. Takwi applied, pro se, for asylum, withholding of removal, and protection under the Convention Against Torture, asserting persecution by the Cameroonian government based on his political opinion.

---

[1] The term "credible fear of persecution" means "there is a significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum." 8 U.S.C. § 1225(b)(1)(B)(v).

At an interim hearing on Mr. Takwi's application, the IJ assessed Mr. Takwi's competency, found Mr. Takwi competent to participate in removal proceedings, and allowed him to proceed pro se.

At his merits hearing, Mr. Takwi claimed membership in the Southern Cameroon National Council (SCNC), a political organization that seeks independence for the Anglophone region of southern Cameroon. He testified military officials arrested him after he participated in a pro-separatist protest and took him to a "prison [where] he was tortured on two occasions." Admin. R., vol. 1 at 214. He further testified that about a year after his release military officials searched his house and beat him severely when "they found pamphlets associating him with SCNC and the separatist movement." *Id.* at 215. Due to this beating, Mr. Takwi testified, "[h]e lost consciousness. He was taken to a hospital, and from the hospital he escaped." *Id.*

Mr. Takwi also supported his case with other evidence, including country condition reports, copies of cards indicating his membership in the SCNC, written personal statements, and statements from others describing Mr. Takwi's mistreatment by the Cameroonian government. Some of this evidence conflicted with Mr. Takwi's testimony about certain details pertaining to the beatings he claimed to have suffered in Cameroon.

After Mr. Takwi's merits hearing, the IJ cast doubt on Mr. Takwi's credibility and found his testimony insufficiently persuasive absent "corroboration from people who could have explained the inconsistencies and differences" between Mr. Takwi's

3

testimony and other evidence, including a letter from Mr. Takwi's brother Elvis. *Id.* at 220. The IJ therefore denied his requests for relief and ordered his removal to Cameroon.

Mr. Takwi obtained counsel, appealed to the BIA, and filed a motion to remand for the IJ to consider new evidence corroborating his testimony. The BIA dismissed the appeal and denied the motion to remand. This petition for review followed. Mr. Takwi makes several arguments in this petition. He first challenges the procedures the IJ employed to assess his competency and the IJ's ultimate conclusion that Mr. Takwi was competent to participate in removal proceedings. Mr. Takwi also argues the IJ failed to make an explicit adverse credibility determination, and the BIA therefore erred by failing to afford him a rebuttable presumption of credibility. Mr. Takwi further contends the BIA's adverse credibility determination is not supported by substantial evidence. Finally, Mr. Takwi claims the BIA should have remanded the matter to the IJ for consideration of new evidence.

## II.   Discussion

### A.  The BIA's Dismissal of Mr. Takwi's Appeal of the IJ's Order

"Where, as here, the BIA affirms an immigration judge's decision in a single Board member's brief order, the BIA's affirmance is the final agency decision, and we limit our review to the grounds for the BIA's decision." *Escobar-Hernandez v. Barr*, 940 F.3d 1358, 1360 (10th Cir. 2019). "However, we may consult the immigration judge's fuller explanation of those same grounds." *Id.*

"We review the BIA's legal conclusions de novo." *Rivera-Barrientos v. Holder*, 666 F.3d 641, 645 (10th Cir. 2012). And we review its "findings of fact under a substantial-evidence standard." *Id.* "Under this standard, '[t]he BIA's findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (alteration in original) (quoting *Yuk v. Ashcroft*, 355 F.3d 1222, 1233 (10th Cir. 2004)).

### 1. Mr. Takwi's Competency

Mr. Takwi contends the IJ violated his Fifth Amendment right to due process by taking inadequate measures to determine his competency. Mr. Takwi also contends he was not competent to participate in his removal proceedings without enhanced procedural safeguards, and the IJ erroneously concluded otherwise. We are not persuaded.

"Our cases do not articulate what precisely an IJ must do to assure itself of an alien's competency." *Birhanu v. Wilkinson*, 990 F.3d 1242, 1252 (10th Cir. 2021). But "[i]n *Matter of M-A-M-*, the BIA described a number of measures an IJ may take to assess an alien's competency." *Id.* at 1253 (citing 25 I. & N. Dec. 474, 480-81 (B.I.A. 2011)). These include asking "questions about where the hearing is taking place, the nature of the proceedings, and the respondent's state of mind," and questions about "whether [the alien] currently takes or has taken medication to treat a mental illness and what the purpose and effects of that medication are." *M-A-M-*, 25 I. & N. Dec. at 480-81. "Proceedings may also be continued to allow the parties to gather and submit evidence relevant to these matters." *Id.* at 481. "The BIA does not

require the immigration judge to take any particular measures, but does require the immigration judge to 'weigh the results from the measures taken and determine . . . whether the [alien] is sufficiently competent to proceed with the hearing without safeguards.'" *Birhanu*, 990 F.3d at 1253 (alterations in original) (quoting *M-A-M-*, 25 I. & N. Dec. at 481).

At an interim hearing, the IJ expressed some concern about Mr. Takwi's health. She asked him how he felt because "sometimes [there was] a long time before [Mr. Takwi] answer[ed] questions, and it look[ed] like [it was] difficult [for him] to answer some questions." Admin. R., vol. 1 at 299. The IJ therefore adjourned the hearing and asked the government to submit relevant medical documentation before the continued hearing date.

At the continued hearing, the IJ asked Mr. Takwi a series of questions to assess his competency. The IJ questioned him about whether he had seen a doctor and what medications he was taking. She also asked him to describe why he was seeking asylum and the evidence he would submit in support of his case. After hearing his lucid responses to these questions, the IJ found Mr. Takwi competent to proceed pro se. She then scheduled a later date for the merits hearing. At the final merits hearing, the IJ asked Mr. Takwi if he felt well enough to proceed, and he indicated that he felt better and was prepared to go forward. The BIA did not find any error in the procedures the IJ employed to assess Mr. Takwi's competency, and neither do we.

We turn next to Mr. Takwi's argument that the BIA substantively erred by finding him competent.

> The test for determining whether an alien is competent to participate in immigration proceedings is whether he or she has a rational and factual understanding of the nature and object of the proceedings, can consult with the attorney or representative if there is one, and has a reasonable opportunity to examine and present evidence and cross-examine witnesses.

*M-A-M-*, 25 I. & N. Dec. at 484. "[A]n alien is presumed to be competent to participate in removal proceedings." *Id.* at 477.

The BIA found Mr. Takwi's "submission of relevant evidence, his written statement, and his testimony which was responsive to the questions asked and reflected an understanding of the nature and purpose of the proceedings" supported the IJ's "finding of competency." Admin R., vol. 1 at 4. Mr. Takwi points to his diagnoses with post-traumatic stress disorder and depression as undermining this finding. But he does not identify any evidence that links either diagnosis with an inability to have a rational and factual understanding of the nature and object of the proceedings. *Cf. M-A-M-*, 25 I. & N. Dec. at 480 ("[A] diagnosis of mental illness does not automatically equate to a lack of competency.").

Mr. Takwi also notes that at times during his testimony he was difficult to understand and provided seemingly incoherent answers to some questions. When viewed in context, the verbal exchanges Mr. Takwi highlights as indicia of incompetency appear instead to be ordinary issues with testimony such as failing to speak clearly and continuing to answer a prior question after a new question has been

asked. For example, Mr. Takwi points to testimony purportedly claiming he was born "'[o]n the street.'" Pet'r Opening Br. at 46 (quoting Admin. R., vol. 1 at 330). But the full context reveals he had been asked where he protested and had answered that he "protested in Santa subdivision, where I was born." Admin. R., vol. 1 at 330. The IJ then asked where he had been born. Mr. Takwi's response "[o]n the street," *id.*, is plainly a continuation of his answer to the question about where he protested, not a response to the intervening question about where he was born. Mr. Takwi also asserts he provided nonsensical testimony indicating he needed a bicycle to go five meters. But the transcript undermines this claim and instead shows Mr. Takwi's lucid discussion with the IJ:

| | |
|---|---|
| IJ: | Okay. So how did you leave the hospital? |
| Mr. Takwi: | When I had to leave, I just walk about some three, I just walk about some five meters. I had to stop the bike. |
| IJ: | You had a bike? |
| Mr. Takwi: | No. We have bike, meaning our community, that, that do, that do, that do transportation, like, for, a town, like, like taxis. |
| IJ: | Okay. |
| Mr. Takwi: | So I had to stop the bike and tell him to, to take me right in the rural community. |

*Id.* at 356.

We agree with the BIA "[t]he record reflects that [Mr. Takwi] was mentally competent and received a full and fair hearing without the implementation of any safeguards." Admin R., vol. 1 at 4.

8

## 2. Presumption of Credibility

Applicants for asylum enjoy a presumption of credibility on appeal to the BIA unless the IJ explicitly makes an adverse credibility determination. Mr. Takwi argues that although the IJ cast doubt on his credibility, she did not make an *explicit* adverse credibility finding. And he argues the BIA therefore erred by failing to afford him a credibility presumption. We agree.

"The [Immigration and Nationality Act] provides that absent an 'explici[t]' 'adverse credibility determination,' 'the applicant or witness shall have a rebuttable presumption of credibility on appeal'" to the BIA. *Garland v. Ming Dai*, 141 S. Ct. 1669, 1677 (2021) (second alteration in original) (quoting 8 U.S.C. §§ 1158(b)(1)(B)(iii), 1229a(c)(4)(C)) (citing 8 U.S.C. § 1231(b)(3)(C)). "The credibility presumption encourages the IJ to make specific findings about credibility." *Id.* at 1678. Yet "'[t]he reluctance to make clean determinations of credibility' appears to be a 'disturbing feature' in immigration cases." *Molina-Diaz v. Wilkinson*, 989 F.3d 60, 65 (1st Cir. 2021) (alterations and recursive quotation marks omitted) (quoting *Ikama-Obambi v. Gonzales*, 470 F.3d 720, 726 (7th Cir. 2006)).

We review de novo whether the IJ "explicitly made" an "adverse credibility determination," 8 U.S.C. §§ 1158(b)(1)(B)(iii), 1229a(c)(4)(C).

The Supreme Court recently left "for another day the question what the factfinder must say or do to furnish an 'explici[t] adverse credibility determination.'" *Ming Dai*, 141 S. Ct. at 1679 (alteration in original). And we lack binding precedent

in this circuit to guide our review.[2] So we start with the plain language of the statute. *See Wichita Ctr. for Graduate Med. Educ., Inc. v. United States*, 917 F.3d 1221, 1224 (10th Cir. 2019).

"A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). The key word in the statutory provisions at issue is "explicitly." The statute does not define this word, but "its common and ordinary usage may be obtained by reference to a dictionary." *Off. of Thrift Supervision v. Overland Park Fin. Corp. (In re Overland Park Fin. Corp.)*, 236 F.3d 1246, 1252 (10th Cir. 2001) (quoting *True Oil Co. v. Comm'r of Internal Revenue*, 107 F.3d 1294, 1299 (10th Cir. 1999)).

---

[2] Several of our unpublished decisions have touched on this question. *See, e.g.*, *Ba v. Gonzales*, 222 F. App'x 702, 706 (10th Cir. 2007) (concluding that an IJ failed to make an "express" finding on credibility even though the IJ had "some questions about the credibility" of the applicant's testimony on some topics and observed another portion of the applicant's testimony was "far-fetched and implausible," "indicat[ing] that the [applicant was] willing to embellish his testimony in order to make it appear stronger"); *Yang v. Gonzales*, 123 F. App'x 964, 966 (10th Cir. 2005) (concluding "the IJ failed to make any explicit findings regarding . . . credibility" where the IJ found the applicant "credible in at least some respects" but added some comments reflecting "at least partial disbelief in [the applicant's] story"); *Efimov v. Ashcroft*, 100 F. App'x 731, 736 (10th Cir. 2004) (holding the "IJ's findings were sufficiently clear and reasonable" where the IJ noted the applicant's "failure to testify credibly" and observed his willingness "to either embellish the true facts or actually engage in outright misrepresentations"). But these cases did not address whether the IJ's findings were sufficiently explicit to avoid the presumption of credibility contemplated by § 1158(b)(1)(B)(iii) or § 1229a(c)(4)(C) because in each case the agency conducted its proceedings before Congress added the presumption. *See* REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 303–05.

10

"Explicit" means "[f]ully and clearly expressed; leaving nothing implied," The American Heritage Dictionary of the English Language (3d ed. 1996), or "fully revealed or expressed without vagueness, implication, or ambiguity: leaving no question as to meaning or intent," Merriam-Webster's Collegiate Dictionary (11th ed. 2003).

Language provides many avenues to fully and clearly express an idea. IJs are therefore "not bound to using certain magic words." *Molina-Diaz*, 989 F.3d at 65. But "IJ's must make 'clean determinations of credibility.'" *Yang v. U.S. Att'y Gen.*, 418 F.3d 1198, 1201 (11th Cir. 2005) (quoting *Iao v. Gonzales*, 400 F.3d 530, 534 (7th Cir. 2005)). "For an IJ's credibility finding to be explicit, the IJ must state in no uncertain terms that [the IJ] finds that the applicant's testimony is or is not credible." *Yan Dan Li v. Gonzales*, 222 F. App'x 318, 323 (4th Cir. 2007) (unpublished), *abrogated on other grounds by Ming Dai*, 141 S. Ct. 1669. By definition, a finding cannot be explicit if it is ambiguous. *See Explicit*, Black's Law Dictionary 579 (6th ed. 1990) (defining "[e]xplicit" as "[n]ot obscure or ambiguous"). We therefore agree with the First Circuit that an "IJ's expression of 'serious doubts'—coupled with [a] later declaration that all such doubts 'could have been overcome with appropriate corroborating evidence'—falls just short of an explicit adverse credibility determination." *Molina-Diaz*, 989 F.3d at 64–65.

Under the header of "III. CREDIBILITY AND CORROBORATION," the IJ noted her "significant concerns" with Mr. Takwi's testimony, doing so "[a]fter considering [his] testimony . . . in its totality and comparing it with the record." Admin.

R., vol. 1 at 214. Although she acknowledged that "[f]or some key facts, [Mr. Takwi had] been consistent," *id.*, she listed several inconsistencies between his testimony and other evidence in the record, stated that they were "too significant to overcome," and that Mr. Takwi's explanations for them were "not convincing," *id.* at 218. Then the IJ stated that "[e]ven if the Court were to stop short of finding that [Mr. Takwi's] testimony was not credible, the fact that [his] testimony had inconsistencies and was significantly different than the evidence he provided would at least require more corroboration from people who could have explained the inconsistencies and differences," to prove a claim of past persecution. *Id.* at 220. The IJ also found Mr. Takwi "failed to persuade this Court that he has a well-founded fear of future persecution <u>because his claim of future persecution is based on the same set of facts and circumstances the Court found not to be credible or, alternatively, persuasive.</u>" *Id.*[3]

The IJ's initial expression of her concerns with Mr. Takwi's testimony falls short of an explicit adverse credibility finding because she did not fully and clearly reject any portion of Mr. Takwi's testimony on credibility grounds. Her statement that "[e]ven if the Court were to stop short of finding that [Mr. Takwi's] testimony was not credible," he would still need to provide corroborating evidence, Admin. R.,

---

[3] The IJ added the underlined portion to the transcript of her oral decision after issuing it. Mr. Takwi argues the addition should be disregarded because it was substantive and Section 4.2(f)(iv) of the BIA Practice Manual only allows IJs to "make minor, clerical corrections to the decision." But Mr. Takwi did not make this argument to the BIA, and we therefore do not consider it. *See* 8 U.S.C. § 1252(d)(1); *see also Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010) ("To satisfy § 1252(d)(1), an alien must present the *same specific legal theory* to the BIA before he or she may advance it in court.") (emphasis in original).

vol. 1 at 220, raises the question: Did the IJ stop short of finding Mr. Takwi's

testimony not credible? She did not tell us.

The IJ's later statement rejecting Mr. Takwi's claim to have a fear of future

persecution "because his claim of future persecution is based on the same set of facts

and circumstances the Court found not to be credible or, alternatively, persuasive,"

*id.* (underline omitted), is ambiguous. The statement refers to facts and circumstances

being incredible, not Mr. Takwi's testimony. And the statement does not make clear

what facts and circumstances the IJ found incredible as compared to the facts and

circumstances she found merely unpersuasive. An ambiguous finding, which leaves

us guessing about whether the IJ came to her determination because the applicant was

not credible, or for some other reason, cannot serve as an explicit adverse credibility

determination under 8 U.S.C. §§ 1158(b)(1)(B)(iii), 1229a(c)(4)(C).

We therefore conclude, under the circumstances here, that the IJ did not make

an explicit adverse credibility determination, and the BIA thus erred by failing to

afford Mr. Takwi a presumption of credibility.[4]

## B. The BIA's Denial of the Motion to Remand

"We review the denial of a motion to remand for an abuse of discretion."

*Witjaksono v. Holder*, 573 F.3d 968, 978–79 (10th Cir. 2009). "'[C]ommitting a legal

error or making a factual finding that is not supported by substantial record evidence is

---

[4] The government does not argue the BIA implicitly rebutted the presumption of credibility and conceded at oral argument that remand to the BIA would be warranted if we were to hold, as we now do, that the BIA should have afforded Mr. Takwi a presumption of credibility.

necessarily an abuse of discretion.'" *Qiu v. Sessions*, 870 F.3d 1200, 1202 (10th Cir.

2017) (quoting *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 n.9 (10th Cir. 2004)).

Mr. Takwi based his motion to remand on several pieces of evidence, including statements from his brother Ndikum, his sister, his mother, his father, a friend, two members of the local chapter of the SCNC, and a farmer who harbored him and aided his escape from Cameroon. Ndikum's affidavit corroborated Mr. Takwi's testimony, and not his other brother Elvis's statement, on each of the discrepancies between their accounts identified by the IJ. The other new statements corroborated Mr. Takwi's claim to be a member of the SCNC and Mr. Takwi's side of several of the discrepancies between Mr. Takwi's testimony and Elvis's statement. And seven of them stated Mr. Takwi could be killed if he were to return to Cameroon.

The BIA focused on whether this new evidence would rehabilitate Mr. Takwi's credibility. It denied his motion to remand based on its view that it would not, and therefore, the BIA concluded, the evidence would not likely change the result in Mr. Takwi's case. But the BIA reached this conclusion without considering the rebuttable presumption of credibility it should have afforded Mr. Takwi.[5] And the government agreed at oral argument the BIA should reconsider its ruling on the motion to remand

---

[5] We note that the BIA's decision also rested on its unsupported factual finding that "[n]one of the proffered statements address the significant discrepancies in Elvis's statement." Admin. R., vol. 1 at 5. The record contradicts this finding.

14

in light of our disposition here.[6] We therefore vacate the BIA's denial of Mr. Takwi's

motion to remand.[7]

### III.  Conclusion

We grant the petition for review and vacate the BIA's order dismissing Mr.

Takwi's appeal and denying his motion to remand. We remand this matter to the BIA

for further consideration consistent with this opinion. We grant Mr. Takwi's pending

motion for leave to proceed in forma pauperis.

---

[6] The IJ noted that to meet his burden of proof on his asylum claim in the absence of persuasive testimony, Mr. Takwi needed "more corroboration from people who could have explained the inconsistencies and differences [between his testimony and other evidence], such as [Mr. Takwi's] younger brother, mother, or sister, or perhaps even another letter from [Elvis]." Admin. R., vol. 1 at 220. Mr. Takwi's new evidence includes some of the evidence identified by the IJ as relevant to his burden of proof—i.e., corroborating statements from his mother, sister, and others.

[7] Mr. Takwi asserts 8 U.S.C. § 1158(b)(1)(B)(ii) compels the BIA to remand his case to the IJ for submission of corroborating evidence. Mr. Takwi does not provide us with a record citation showing he made this argument to the BIA, and in our independent review of the record, we did not locate any mention of this issue in the proceedings before the agency. We therefore do not consider this argument. *See Garcia-Carbajal*, 625 F.3d at 1237.