**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**July 22, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

JASVIR SINGH,

    Petitioner,

v.

PAMELA J. BONDI, United States
Attorney General,*

    Respondent.

No. 23-9598

_____

**Petition for Review from the Board of Immigration Appeals**
_____

Stephen W. Spurgin, El Paso, Texas, for Petitioner.

Jonathan S. Needle, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice (Julie M. Iversen, Senior Litigation Counsel, Office of Immigration Litigation, with him on the briefs), Washington, D.C., for Respondent.
_____

Before **HARTZ**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

**EID**, Circuit Judge.
_____

Jasvir Singh, a native and citizen of India, was apprehended in August 2018 for entering the United States without possessing a valid entry document. In removal

---

* On February 5, 2025, Pamela J. Bondi became Attorney General of the United States. Consequently, her name has been substituted for Merrick B. Garland as Respondent, pursuant to Fed. R. App. P. 43(c)(2).

proceedings brought by the Department of Homeland Security, Singh conceded his removability but requested asylum, withholding of removal, and protection under the Convention Against Torture.

While awaiting his hearing before an immigration judge, Singh began a 74-day hunger strike to protest the conditions at his detention center, eventually resuming normal eating habits approximately three weeks before his asylum hearing. Nevertheless, Singh sought a continuance on the ground that he lacked the competency necessary to participate in the immigration proceeding as he recovered from his prolonged hunger strike.

The Immigration Judge ("IJ") denied Singh's request for a continuance after finding that Singh appeared "healthy and well" based on Singh's responses to the questions posed at the proceeding. Singh then abandoned his asylum application by refusing to sign the necessary form, resulting in an order of removal. Singh appealed the decision to the Board of Immigration Appeals ("BIA"), which affirmed.

Singh now asks this Court to overturn the BIA's decision, arguing that the agency erred by finding that Singh was competent to proceed and by denying his motion for a continuance. However, considerable evidence supports the finding that Singh did not exhibit sufficient indicia of mental incompetency. And the agency properly concluded that there was not good cause for a continuance given that Singh was afforded sufficient time to prepare for his hearing and was represented by counsel. Therefore, we affirm the BIA's decision and deny Singh's petition for review.

**I.**

In August 2018, Jasvir Singh, a native and citizen of India, entered the United States without authorization after allegedly facing political violence in India. According to Singh, members of the "Sh[i]romani Akali Dal Badal Party" ("SADB Party") and the "Congress Party" targeted him because of his membership and ranking within the rival "Shiromani Akali Dal Amritsar Mann Party" ("Mann Party"). A.R. Vol. I at 231. Singh claims that members of both the SADB Party and Congress Party physically beat him on two separate occasions, threatened to kill him unless he left the Mann Party, and shot at him after he attended a political rally. Despite Singh's insistence to police that he was the victim of politically motivated attacks, local authorities refused to investigate any of these incidents, ultimately concluding that Singh was lying. Consequently, Singh believed his only option was to flee India. He embarked on his voyage, traveling through multiple countries before ending up in the United States.

Shortly after Singh's entry into the United States, immigration authorities apprehended him in New Mexico, where he was processed for expedited removal. An asylum officer interviewed Singh and found that he possessed a credible fear of persecution, and the case was referred to an IJ. On October 19, 2018, the government charged Singh as "subject to removal" under 8 U.S.C. § 1182(a)(7)(A)(i)(I) (not in possession of a valid entry document at the time of application for admission), and 8 U.S.C. § 1182(a)(6)(A)(i) (present in the United States without admission or parole).

3

On November 8, 2018, Singh appeared pro se at an initial hearing before an IJ and requested additional time to find an attorney, which was granted.  At the next hearing on January 3, 2019, Singh, still proceeding pro se, admitted the five factual allegations in the "Notice to Appear."  Because Singh effectively conceded his removability, the IJ sustained the two charges against Singh.  When Singh continued to express fear of returning to India, the IJ advised Singh that he was required to submit his asylum application at the next hearing, which the judge scheduled for February 13, 2019.

Around the same time, in early January of 2019, Singh began a hunger strike to protest the conditions in his detention center as well as the denial of bond in his case.  The hunger strike lasted 74 total days but was briefly interrupted for a two-week period when the government obtained a court order providing for Singh's forced feeding.  On March 16, 2019, Singh resumed eating under the advice of counsel.

Singh again appeared pro se before the IJ on February 13, 2019, where he submitted his I-589 form (application for asylum and withholding of removal).  During that proceeding, the IJ scheduled a hearing on the merits of the asylum application to take place on March 13, 2019; at the same time, the IJ warned that it would "not grant a continuance, merely because [Singh] hired a lawyer at a late[r] date."  A.R. Vol. I at 111.

Singh eventually retained an attorney, who filed a motion on March 8, 2019, to continue the merits hearing, just five days before the originally scheduled hearing.

4

The motion argued that Singh "lack[ed] the physical capacity to attend [the hearing] and testify" because of the persisting effects of his hunger strike. A.R. Vol. II at 658–60. The IJ did not rule on this motion. However, the IJ did reschedule the merits hearing for May 1, 2019, due to an apparent scheduling conflict.

On March 15, 2019, the government filed a motion to expedite the merits hearing "to avoid further delay in the adjudication of [Singh]'s application for relief," which the IJ granted five days later. *Id*. at 538. The merits hearing was expedited to April 5, 2019, more than three weeks after the initial merits hearing was supposed to take place. By that date, Singh had been eating for three weeks.

At the merits hearing on April 5, Singh filed another motion to continue, asserting that (1) his "mental and physical well-being [ ] exhibited a marked deterioration" since his involuntary transfer to the general population from the ICE medical unit on March 31, 2019, which "preclud[ed] his ability to attend and testify," and (2) Singh's counsel "was not provided with notice nor a reasonable opportunity to oppose DHS'[s] motion for an expedited hearing." *Id*. at 514. The IJ denied Singh's motion for a continuance, noting that Singh was able to understand questions presented to him and answer questions on his own behalf. The IJ further observed that Singh "appear[ed] to be in good health and appear[ed] to be well and able to proceed." A.R. Vol. I at 130. Moreover, the court concluded that there was no good cause for a continuance because the motion failed to "cite a specific medical deficiency that would prohibit [Singh] from testifying," but rather "[spoke] of longer-term medical issues that may result from a hunger strike." *Id*. at 85–86.

5

After denying the continuance, the IJ turned to the merits. Singh had withdrawn his earlier asylum application at the hearing and submitted an updated application that, according to Singh's counsel, contained several minor and non-substantive changes. In response to questioning by the IJ, Singh stated that he was "aware of all the information in [his] I-589 application," stated that he did not want to make "any changes, updates or corrections" to his application, and affirmed that the information contained within the application was "true and correct." *Id.* at 131–32. Singh, however, refused to sign the application and expressed reservation about proceeding with the hearing. The IJ then ordered a recess so that Singh could confer with his counsel, advising Singh that if he did not sign the application, then the court would deem the asylum application abandoned and issue a removal order. Following the recess, Singh's counsel relayed Singh's representation that he was "unable to understand" and "unable to sign the application." *Id.* at 135. Consequently, the IJ found that Singh waived the opportunity to apply for asylum. *See* 8 C.F.R. § 1208.3(c)(3) (an unsigned asylum application "shall be rejected by the immigration court").

Singh timely appealed the IJ's decision to the BIA. His appeal included two claims that are relevant here: (1) that the IJ had erred in assessing Singh's mental competency and (2) that the IJ erred in denying a continuance. The BIA rejected both arguments.

First, the BIA held that the IJ properly addressed the issue of mental competency. Based on the IJ's detailed factual findings, the BIA concluded that

6

there were insufficient indicia of mental incompetency to warrant any further assessment. The BIA noted that the IJ had made specific observations about Singh's demeanor and ability to move around the courtroom, that the IJ remarked that Singh appeared healthy and well, and that Singh's lack of understanding arose only *after* an extended discussion about a continuance. The BIA gave special weight to the fact that Singh advised the court that he understood what was being said at the hearing. Because the IJ's analysis properly focused on whether there were sufficient indicia of mental incompetency, the BIA concluded that the IJ did not clearly err.

Second, the BIA held that Singh's assertion that he showed good cause for a continuance lacked merit. It noted that Singh was granted several continuances and that the merits hearing was held nearly five months after Singh's initial hearing. Because Singh had sufficient time to prepare for his hearing, was represented by counsel, and was able to proceed at his merits hearing, the BIA concluded that the IJ did not err in denying the continuance motion.

Therefore, the BIA dismissed Singh's appeal. Singh timely petitioned for review in this Court. *See* 8 U.S.C. § 1252(b)(1).

## II.

"Our scope of review directly correlates to the form of the BIA decision." *Sidabutar v. Gonzales*, 503 F.3d 1116, 1123 (10th Cir. 2007). Where, as here, a single member of the BIA affirms an IJ decision, we review the BIA's opinion, but "we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006).

7

**A.**

We begin with Singh's claim that that the BIA erred when it determined that Singh was competent to participate in his immigration proceeding. Because mental competency is a factual determination, the agency's finding on this front can only be set aside if it is not supported by substantial evidence. *Xue v. Lynch*, 846 F.3d 1099, 1104 (10th Cir. 2017). Under the substantial-evidence standard, "[t]he agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 590 U.S. 573, 584 (2020).

As our Court has explained, "[t]he test for determining whether an alien is competent to participate in immigration proceedings is whether he or she has a rational and factual understanding of the nature and object of the proceedings, can consult with the attorney or representative if there is one, and has a reasonable opportunity to examine and present evidence and cross-examine witnesses." *Takwi v. Garland*, 22 F.4th 1180, 1185 (10th Cir. 2022) (quoting *Matter of M-A-M-*, 25 I. & N. Dec. 474, 484 (B.I.A. 2011)). Notably, "an alien is presumed to be competent to participate in removal proceedings." *Matter of M-A-M-*, 25 I. & N. Dec. at 477.

An IJ, however, is not automatically compelled to take certain measures to assure itself of an alien's competency. Rather, an IJ must conduct a formal competency inquiry only "[w]hen there are indicia of incompetency." *Id.* at 480. Indicia of incompetency "include a wide variety of observations and evidence," including "the inability to understand and respond to questions, the inability to stay on topic, or a high level of distraction." *Id.* at 479. Alternatively, evidence of

incompetency may appear in the record.  There may be "direct assessments of the respondent's mental health . . . from medical health professionals" or affidavits or testimony "from teachers, counselors, or social workers" warranting further inquiry. *Id.*  But when the totality of the record does not present concerns about competency, nothing is required of the IJ.  *Id.* at 484.

**B.**

Applying that framework, we hold that neither the IJ nor the BIA erred when finding Singh competent to proceed at his merits hearing.  After reviewing the record, it is apparent that substantial evidence supports the finding that Singh did not exhibit sufficient indicia of mental incompetency.

Although Singh was recovering from a recent hunger strike and indicated, both through counsel and in his own testimony, that he did not feel well enough to proceed at his merits hearing, Singh was responsive to questioning by the court and, according to the IJ, appeared "healthy and well" based on his demeanor.  A.R. Vol. I at 4.  The IJ found that Singh stood up, sat down, and moved around the courtroom and answered questions posed by the court.  Notably, Singh, with his attorney present, specifically advised the court that he understood the questions posed.  The IJ further noted that Singh's lack of understanding arose only *after* an extended discussion about a continuance.

In addition, when the issue of competency was brought to the attention of the court, the IJ engaged with Singh in the following colloquy regarding Singh's hunger strike:

9

Judge: Okay.  When was the last time you ate?
Singh: End of March.
Judge: Okay.  Have you eaten today?
Singh: Yes.
. . .
Judge: Okay.  When did you start and when did you end
your hunger strike?
Singh: On the 2nd [of January] I have started.
Judge: And when did you end?
Singh: On the 16th [of March] during the night perhaps.
. . .
Judge: Okay.  Are you understanding my questions?
Singh: Yes.  I am understanding.

*Id.* at 128–30.  Thus, the IJ verified not only that Singh had eaten the day of the

hearing, but also that Singh had resumed eating more than three weeks prior.  In fact,

Singh was able to provide precise dates of the start and end of his hunger strike—

evidence that he had the ability to process questions and remember key facts.

Singh primarily points to medical evidence from two physicians—Dr. Stefan

Schaefer and Dr. Kim Griswold—as proof that his physical and mental decline

following his transfer to the general population of the detention center rendered him

incompetent.  He claims that the IJ did not consider this pertinent evidence when

assessing competency.  The problem is, the IJ did do so—in fact, quite explicitly.

After "review[ing] all the information contained in the record," including the

medical evidence at issue, the IJ determined that the evidence spoke to "longer-term

medical issues that may result from a hunger strike that [Singh] engaged in," as

opposed to any "specific medical deficiency" that would disable Singh from

testifying.  *Id.* at 86–87.

10

We agree with the IJ's characterization of the medical records.  The record indicates that Dr. Shaefer conducted a "complete physical exam" of Singh on March 27, 2018, while Dr. Griswold stated that she had only reviewed a "significant portion" of Singh's medical records "while he was not eating."  A.R. Vol. II at 520, 527.  Both doctors expressed concern about Singh's treatment during his post-starvation re-feeding period, but neither assessed his competency—specifically, whether he had the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense.  Instead, the doctors discussed other non-cognitive physical ailments, such as cardiomyopathy (weakening of the heart), nerve damage, and diarrhea.  The physicians advocated for additional treatment and warned that the conditions, if left untreated, could "develop into more chronic, life-impairing if not life threatening conditions."  *Id* at 522.

The closest Dr. Schaefer got to assessing Singh's competency was in a letter on April 3, 2019, after he had learned that Singh was transferred to the detention center's general population.  That letter states, in conclusory language, that Singh "undoubtedly will have difficulty in focus and attentiveness during [his] hearing," and "his basic comprehension may very likely be impaired as well."  *Id.* at 525.  But these statements are predictions based on the sole fact that Singh *had yet to* test his vitamin levels, deficiencies of which *could* "cause changes in cognition, forgetfulness, delirium and frank encephalopathy."  *Id.*  Without any concrete medical evidence that Singh was not able to understand the nature and object of the proceedings, we cannot conclude that the IJ erred by finding Singh competent to

11

proceed. After all, "the mere inability to remember certain events and give certain testimony does not amount to mental incompetency." *Salgado v. Sessions*, 889 F.3d 982, 988 (9th Cir. 2018).

The only other evidence of incompetency originated from Singh's own attorney. Singh's counsel stated that he had met with Singh "on a daily basis" since Singh's transfer to the general population and had "personally seen a significant deterioration in [Singh's] well-being, mood, and his ability to remember." A.R. Vol. II at 516. But this self-serving evidence fails to provide specific examples of Singh exhibiting incompetency and does not adequately explain how conditions in the general population caused a sudden deterioration in his condition. Moreover, because Singh's counsel could not "speak to why [Singh] was transferred" into the detention center's general population, the IJ was well within its discretion to infer that DHS "transferred [Singh] out [of the medical unit] because his condition [had] improved." A.R. Vol. I at 128.

Thus, because Singh engaged in a responsive colloquy with the IJ, consulted with counsel, and presented evidence, the agency did not err in finding that there were no indicia of mental incompetency.[1] Certainly, we cannot say that the evidence

---

[1] Singh also contends that the IJ erred by not requesting medical records from DHS before making its competency determination. The BIA correctly rejected that argument, explaining that Singh pointed to "no evidence that would establish the DHS has any such specific [medical] information." A.R. Vol. I at 6. While DHS does have an obligation to disclose relevant medical evidence when its detainees are provided medical care, *see Matter of M-A-M-*, 25 I. & N. Dec. at 480; 8 C.F.R. § 1240.2(a), there were not "specific indications that [ ] later medical records not provided to the IJ or the BIA [existed] that could have reflected a deterioration in

"compels" a contrary conclusion. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992).

### C.

Likewise, the mere fact that Singh was suffering from a physical or mental ailment does not categorically equate to incompetency. Our previous decisions on this point are instructive.

Take *Takwi v. Garland*, 22 F.4th 1180 (10th Cir. 2022). There, we held that that the BIA did not err in concluding that an alien was competent despite suffering from and being diagnosed with post-traumatic stress disorder and depression. *Id.* at 1185. Because the asylum seeker did "not identify any evidence that links either diagnosis with an inability to have a rational and factual understanding of the nature and object of the proceedings," our Court agreed that the record reflected that the alien was competent. *Id.* Additionally, we agreed with the BIA that the "submission of relevant evidence, [a] written statement, and [the alien's] testimony which was responsive to the questions asked and reflected an understanding of the nature and purpose of the proceedings supported the IJ's finding of competency." *Id.*

---

[Singh's] condition." *Calderon-Rodriguez v. Sessions*, 878 F.3d 1179, 1183 (9th Cir. 2018). Rather, Singh was evaluated by two physicians less than a week before the merits hearing and was provided the resulting medical reports. Neither the BIA nor the IJ had any reason to believe that DHS had relevant medical evidence in its sole possession. Accordingly, the IJ did not err in making its competency determination without requesting any such evidence.

Similarly, in *Barrera v. Barr*, 798 F. App'x 312 (10th Cir. 2020) (unpublished),[2] we agreed with the BIA that "the totality of the record . . . [did] not present concerns regarding [the asylum seeker's] mental competency." *Id.* at 317 (citation omitted). Barrera, the asylum seeker, submitted a detailed application for asylum, testified extensively, and cogently responded to numerous questions. *Id.* And "other than her self-serving testimony that the IJ found 'unbelievable,' the record [did] not contain evidence linking her head trauma or PTSD to any memory problems or other indicia of incompetence." *Id.* (citation omitted).

Just as in *Takwi* and *Barrera*, Singh was able to submit relevant evidence (including a detailed asylum application form), was capable of responding to extensive questioning, and failed to link his medical condition to indicia of incompetence beyond conclusory predictions by his physicians and attorney, lending support to the agency's finding that Singh was competent to proceed.

### D.

Finally, Singh argues that the IJ erroneously required him to demonstrate a "specific medical deficiency" to justify his incompetency. A.R. Vol. I at 4. The BIA correctly rejected that argument, explaining that the IJ's analysis "properly focused on whether there were sufficient indicia of mental incompetency" and "made multiple

---

[2] Unpublished cases cited in this decision are not binding precedent, but we consider them for their persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

specific observations regarding the state of [Singh's] mental competency at the time of the hearing" before reaching its conclusion. *Id.*

As discussed above, indicia of incompetency include "the inability to understand and respond to questions, the inability to stay on topic, or a high level of distraction." *Matter of M-A-M-*, 25 I. & N. Dec. at 479. Such indicia additionally include "direct assessments of the respondent's mental health." *Id.* The IJ correctly applied the right standard when assessing Singh's competency by engaging in questioning surrounding Singh's hunger strike and reviewing the medical reports in the record. Thus, there was no error in the IJ's analysis.

In sum, we hold that substantial evidence supports the finding that Singh did not exhibit sufficient indicia of mental incompetency. Although Singh was recovering from a recent hunger strike, he was able to rationally answer questions— including about his own ability to understand the questions posed to him—and appeared "health[y]" and "well" at the hearing. A.R. Vol. I at 130. The IJ correctly assessed Singh's competency by engaging in questioning surrounding Singh's hunger strike and reviewing the medical reports in the record, which failed to address Singh's competency. Thus, the BIA did not err in finding Singh competent to proceed at his merits hearing.

## III.

We turn next to Singh's argument that the BIA abused its discretion by denying Singh's motion for a continuance. An IJ may continue a hearing for good cause. 8 C.F.R. § 100.29. Because the IJ's decision is discretionary, we will only

overturn the BIA's affirmance of the denial if the decision "was made without a rational[] explanation, inexplicably departed from established policies, or rested on an impermissible basis." *Jimenez-Guzman v. Holder*, 642 F.3d 1294, 1297 (10th Cir. 2011) (alteration in original).

The denial of Singh's motion for a continuance did not constitute an abuse of discretion. The BIA concluded that a continuance was not warranted "because [Singh] was granted sufficient time to prepare for his hearing, was represented by counsel, and was able to proceed at his merits hearing." A.R. Vol. I at 5. Further, the BIA noted that Singh was already granted "several continuances," and although a motion to expedite the hearing was granted, the merits hearing was held "nearly 5 months after [Singh's] initial hearing in November 2018." *Id.* All of these factors demonstrate that Singh had ample time to prepare for his hearing and lacked good cause for a continuance.

We have previously upheld denials of continuances under similar circumstances, particularly when the IJ had previously continued the hearings multiple times. *See Jimenez-Guzman*, 642 F.3d at 1298 (affirming denial of a continuance when the "IJ had already continued the removal hearing several times"); *Reyes-Garcia v. Lynch*, 617 F. App'x 884, 886 (10th Cir. 2015) (unpublished) (finding no abuse of discretion to decline further delay where IJ had already granted three continuances, providing the alien with eleven extra months to prepare).

Singh contends that the agency erred by failing to apply the factors articulated in *Matter of Sibrun*, 18 I. & N. Dec. 354 (B.I.A. 1983). That decision made clear that

16

when "a motion for continuance [is] based upon an asserted lack of preparation and a request for opportunity to obtain and present additional evidence," the "alien at least must make a reasonable showing that the lack of preparation occurred despite a diligent good faith effort to be ready to proceed and that any additional evidence he seeks to present is probative, noncumulative, and significantly favorable to the alien." *Id.* at 356. But Singh's continuance motion did not assert that he was not prepared or that he needed more time to obtain and present additional evidence. Rather, his motion focused on his alleged lack of mental capacity and the potential peril to his health if he was forced to proceed at the hearing. *See* A.R. Vol. II at 513–17; A.R. Vol. I at 124 (Singh's counsel asserting that the sole ground for its continuance motion is that Singh is "not medically healthy enough to proceed"). Thus, there was no reason for the IJ to analyze Singh's continuance motion under the *Sibrun* standard.

Even assuming *Sibrun* applies, Singh still would lack good cause for a continuance. For one thing, his inability to testify stemmed from a self-imposed hunger strike. To be sure, we do not doubt the sincerity of Singh's efforts to protest his treatment while in DHS custody. However, as a general matter, it is difficult to see how self-inflicted incapacitation qualifies as a "good faith effort" to be ready to proceed. An alien cannot indefinitely delay his removal proceedings simply by engaging in self-harm. If that were not so, hunger strikes and other forms of self-harm would become a convenient litigation strategy for asylum seekers like Singh.

17

We decline Singh's invitation to adopt a continuance standard that transforms harmful behavior into "good cause."

Moreover, Singh failed to specifically identify any additional evidence he wished to obtain or present that was not already contained in his asylum application, which included a large volume of supporting exhibits and a three-page declaration authored by Singh himself.  *See Arrayga v. Garland*, No. 22-9549, 2023 WL 3410539, at *3 (10th Cir. May 12, 2023) (unpublished) (concluding that the alien did not show good cause for a continuance because he "describe[d] no additional facts or evidence he could have presented had he been allowed more time").  And the record belies any claim of mental incompetency, for the reasons discussed above.  Thus, because Singh could have fully testified at his hearing, he cannot identify any additional evidence that he would have obtained had a continuance been granted. The agency therefore did not err by denying Singh's continuance motion.[3]

**IV.**

For the reasons stated above, we AFFIRM the BIA's decision and DENY Singh's petition for review.

---

[3] Singh further contends that DHS did not properly serve its motion to expedite the merits hearing and that the IJ erred by failing to consider that circumstance when deciding whether good cause for a continuance existed.  But this fact is irrelevant to the continuance analysis.  Singh, through his counsel, represented that he would have been prepared to proceed on the date of the merits hearing but for his transfer to the general population in his detention center.  Thus, Singh's desire for a continuance stemmed from a reason entirely separate from a deficiency in the service of a prior motion.  It is not error to disregard a prior circumstance that did not prejudice the alien when assessing whether good cause for a continuance exists.