**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2135
_____

WILSON FLORES-JIMENEZ,

Petitioner

v.

ATTORNEY GENERAL
UNITED STATES OF AMERICA

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A215-663-864)
Immigration Judge: Jason L. Pope

Argued on March 29, 2022

Before: RESTREPO, ROTH and FUENTES, Circuit Judges

(Opinion filed: May 2, 2023)

Pina Cirillo                    **(ARGUED)**
Leena A. Khandwala
Rutgers University of Law
Immigrant Rights Clinic
123 Washington Street
4th Floor
Newark, NJ 07102

Counsel for Petitioner

David Schor                              **(ARGUED)**
Christin N. Whitacre
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

   Counsel for Respondent

———————

O P I N I ON[*]

———————

**ROTH**, <u>Circuit Judge</u>:

  Wilson Flores Jimenez seeks review of a June 2, 2021, decision by the Board of Immigration Appeals (BIA).  Because the BIA, and the Immigration Judge (IJ) before it, had properly considered all the relevant evidence and we cannot reweigh this evidence, we will deny the petition for review.

**I.**

  Flores Jimenez is a citizen of the Dominican Republic.  He entered the United States in 1999 without being admitted or paroled by an immigration officer.  In 2018, he was arrested for criminal mischief, burglary, and contempt related to violation of a domestic violence order.  The Department of Homeland Security (DHS) encountered him at a correctional center and issued a Notice to Appear, charging him as removable under

———————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

8 U.S.C. § 1182(a)(6)(A)(i). On January 7, 2020, Flores Jimenez appeared with counsel before an IJ and requested a hearing to assess his mental competency.

The IJ held a mental-competency hearing at which he explained the nature of the proceedings to Flores Jimenez, who confirmed, in his own words, that he understood why he was there. He also confirmed that he understood his right to retain counsel and to present evidence. The IJ heard testimony from Dr. Mihaela Dranoff, who conducted Flores Jimenez's psychological evaluation, confirming that Flores Jimenez suffered from acute stress disorder and suggested that his condition may have progressed to Post-Traumatic Stress Disorder. At the conclusion of that hearing, the IJ found that Flores Jimenez was competent to proceed. Alternatively, the IJ found that, even if he were not mentally competent, sufficient safeguards existed because he was represented by an attorney.

At a June 17, 2020, hearing, Flores Jimenez explained that he intended to seek asylum, withholding of removal, protection under the Convention Against Torture (CAT), and cancellation of removal for certain nonpermanent residents. He submitted applications for that relief and protection on July 7, 2020.

During his September 14, 2020, removal hearing, Flores Jimenez asserted that changed circumstances excused his time-barred asylum application: his mental illness had only recently emerged and resulted in his institutionalization. He testified in support of his claims, discussed his birth abroad, his five daughters (three living in the United States, two in Puerto Rico), and his 1999 arrival in the United States. Flores Jimenez also testified that he may be kidnapped by someone who believes that he has wealth, that his

3

family may believe he is a drug trafficker, and that someone may harm him because of past problems stemming from political differences if returned to his country of origin. He elaborated that, before 1999, certain family members, including his mother and uncle, left the Dominican Republic due to political problems. However, both his mother and uncle are dead, and he denied any personal political involvement in the Dominican Republic.

Flores Jimenez also testified that, during his teenage years in the mid-1990s, he encountered the El Felar criminal gang. This gang was known for committing robberies and selling drugs. He testified that the gang attacked him several times in its recruitment attempt, so he fled to Santo Domingo, the country's capital. Once he was in Santo Domingo, he attended a festival in August 1998, during which he again encountered a gang member, who cut his arm. The attacker spent months in prison as a result.

In addition, Flores Jimenez discussed his criminal history in the United States, confirming that he was arrested a dozen times for different crimes. He claimed that, following his final arrest, he was committed to a psychiatric hospital for six months due to stress, voices, and paranoia. In addition, he testified that he is "mainly . . . bisexual,"[1] has been in a same-sex intimate relationship for the last fourteen years, and had been in a same-sex relationship in the Dominican Republic.

The IJ denied his applications for relief and protection, and ordered his removal. Flores Jimenez appealed, challenging the denial of asylum and related protection. Before

---

[1] AR at 264.

4

the BIA, he contended that he had proven past persecution based on the gang's recruitment effort, as well as likely future persecution on account of his various asserted protected characteristics. He also challenged the finding that he was sufficiently competent to proceed and argued that DHS failed to show that he is removable as charged. The BIA dismissed the appeal. Flores Jimenez petitioned for review.

## II.

The BIA exercised jurisdiction under 8 C.F.R. § § 1003.1(b)(3) and 1240.15, which grants it authority to review the decisions of IJs in removal cases. We have jurisdiction under 8 U.S.C. § 1252(a)(1) because this case is a review of a final order of removal and raises questions of law. When the BIA reviews the IJ's decision and issues its own opinion, we generally review only the BIA's decision.[2] However, if the BIA's decision "substantially relies upon" the IJ's decision, the court may review both the BIA's and the IJ's decisions.[3] Because the BIA issued its own decision but affirmed and substantially relied on the IJ's reasoning, we may review both decisions.[4]

## III.

Flores Jimenez seeks review of several determinations by the BIA: the BIA's decision to sustain the IJ's mental-competency determination, its finding that his asylum application was untimely, its holding on past persecution on account of his membership

---

[2] *Kaplun v. Att'y Gen.*, 602 F.3d 260, 265 (3d Cir. 2010).
[3] *Kaita v. Att'y Gen.*, 522 F.3d 288, 295–96 (3d Cir. 2008); *see Patel v. Att'y Gen.*, 599 F.3d 295, 297 (3d Cir. 2010) (holding that this Court "look[s] to the decision of the IJ to the extent that the BIA defers to, or adopts, the IJ's reasoning").
[4] *See Patel*, 599 F.3d at 297; *Kaita*, 522 F.3d at 295.

in a particular social group (PSG), and its determination that he did not establish a well-founded fear of future persecution. He further contends that the BIA erred with respect to his imputed criminal and political opinion claims, as well as with respect to his CAT claim. Finally, he asserts that the DHS's reliance on Form I-213 was improper. Because all these contentions lack merit, we will deny the petition for review.

## A. Mental Competence

Flores Jimenez argues that the BIA improperly overlooked record evidence that he was observably confused during his hearing and that all relevant evidence was not reviewed in the finding of mental competency. He contends that the IJ and the BIA disregarded his medical records from Trenton Psychiatric Hospital and Dr. Dranoff's psychological report. The medical records state that Flores Jimenez's "source of information was not reliable,"[5] and that his "paranoid delusions[…] prevented him from participating in a sustained rational discussion regarding his legal circumstances."[6] Flores Jimenez also argues that his own in-court testimony demonstrates his mental incompetence and the IJ chose to ignore the multiple discrepancies in his testimony.

Incompetence turns on whether a mental infirmity "prevent[s] [the non-citizen] from meaningfully participating in [the] proceedings."[7] Here, the BIA was not

---

[5] AR at 908.
[6] AR at 864.
[7] *Matter of M-A-M-*, 25 I. & N. Dec. 474, 480, 484 (BIA 2011) (explaining that competency considerations include "whether [a non-citizen] has a rational and factual understanding of the nature and object of the proceedings, can consult with [an] attorney or representative if there is one, and has a reasonable opportunity to examine and present evidence and cross-examine witnesses").

compelled to find a lack of competence despite evidence to the contrary as Flores Jimenez explicitly confirmed his understanding and recited, in his own words, his rights and articulated the reason for the proceedings. Further, as the IJ noted, Flores Jimenez fully presented his case and appropriately and coherently answered questions, again demonstrating his understanding of the facts.

The BIA held that the IJ did not err in finding Flores Jimenez mentally competent because the IJ had stated "'[a]ll admitted evidence has been considered in its entirety, regardless of whether specifically mentioned in the text of th[e] decision.'"[8] Contrary to Flores Jimenez's arguments on appeal, the IJ specifically discussed Dr. Dranoff's testimony, noting that she reaffirmed her diagnosis of acute stress disorder from her report. The IJ emphasized that, despite these diagnoses and Flores Jimenez's history of paranoid thoughts, he was "coherent, and responsive" at the hearing and demonstrated an understanding of the proceedings.[9] The transcript of the competency hearing supports these findings.

Substantial evidence supports the IJ's conclusions regarding mental competency.[10] Although the BIA and IJ correctly attributed discrepancies in Flores Jimenez's testimony to mental illness, those discrepancies alone do not establish that he was not mentally competent.[11] The IJ acknowledged Flores Jimenez suffered "periodic episodes of

---

[8] AR at 4 (citation omitted).
[9] AR at 199–200.
[10] *Fei Mei Cheng v. Att'y Gen.*, 623 F.3d 175, 182 (3d Cir. 2010).
[11] *Id.*

decompensation" and "bouts of intense paranoia, fear and aggression."[12]  However, as the

IJ also explained, "'[m]ental competency is not a static condition'; what matters is

respondent's mental state at the time of the removal proceedings."[13]  At the time of the

hearing, the IJ found Flores Jimenez to be competent.

## B.  Timeliness of the Application

Flores Jimenez next argues the BIA erred in denying his asylum application as

untimely.  Asylum applications usually must be filed within one year of arrival in the

United States.[14]  Flores Jimenez claimed that his mental illness qualified as a changed

circumstance warranting an exception to the one-year deadline.[15]  He argues that the BIA

relied solely on a mischaracterization of fact in affirming the IJ's conclusion that the

application was not filed within a reasonable period of time.  The BIA stated that the

asylum application was filed in July 2020, more than two years after Flores Jimenez was

a patient in the Trenton Psychiatric Hospital "from about January 2018, to June or July

2018."[16]  However, Flores Jimenez is correct that the record shows that his in-patient stay

was from January 2019 to July 2019.

Generally, we lack jurisdiction to review discretionary or factual determinations

regarding whether a non-citizen has established changed circumstances that would excuse

---

[12] AR at 95.
[13] *Diop v. Lynch*, 807 F.3d 70, 76 (4th Cir. 2015) (quoting *Matter of M-A-M-,* 25 I. & N. Dec. at 480).
[14] *See* 8 U.S.C. § 1158(a)(2)(B).
[15] *See id.* § 1158(a)(2)(D).
[16] AR at 5.

8

the untimely filing of an asylum application.[17]  However, if Flores Jimenez is correct that the BIA's reliance on an erroneous fact could be considered a due-process violation, a claim over which this Court does have jurisdiction,[18] the question then becomes whether the BIA's error was harmless.[19]

Here, any error was harmless.  The IJ and BIA determined that Flores Jimenez would have known about the potential for his removal as a criminal deportee commencing with his December 2017 arrest, continuing with his January 24, 2018, incarceration, and on through his November 13, 2019, sentencing.  Yet he did not file his application for relief until July 2020.  The IJ reasoned that Flores Jimenez should have been aware of the prospect of removal, at the absolute latest, when the DHS began detaining him in December 2019, well after his in-patient stay at Trenton Psychiatric Hospital.  The IJ also determined that his failure to file his application for seven months thereafter was unreasonable.[20] The BIA agreed with that determination, reiterating that his seven-month delay was not reasonable under the circumstances.  Even accepting Flores Jimenez's premise that he did not appreciate his mental illness, which the record shows began in 2017, until his hospitalization ended in July 2019, the delay in filing his

---

[17] *See Sukwanputra v. Gonzales*, 434 F.3d 627, 635 (3d Cir. 2006); *see also Kaita*, 522 F.3d at 296.

[18] *See Chen v. Att'y Gen.*, 471 F.3d 315, 329 (2d Cir. 2006) (recognizing its jurisdiction to consider a claim when a discretionary decision involved "fact-finding which is flawed by an error of law").

[19] *See Yuan v. Att'y Gen.*, 642 F.3d 420, 427 (3d Cir. 2011) (applying harmless error on immigration review "when it is highly probable that the error did not affect the outcome of the case").

[20] A delayed application due to changed circumstances must be filed "within a reasonable period given those changed circumstances." 8 C.F.R. § 1208.4(a)(4)(ii) (quotation marks omitted).

application from December 2019 to July 7, 2020 was unreasonable.

## C. Past Persecution

Flores Jimenez next contests the IJ's decision to deny a PSG for "Young Dominican Males Who Resist Gang Recruitment and Oppose Gang Violence." He asserts that the IJ should have conducted an individualized analysis of his case. To make out a prima facie case for asylum or withholding of removal, a non-citizen must show persecution or a well-founded fear of persecution "on account" of a statutorily protected ground, including "race, religion, nationality, membership in a particular social group, or political opinion."[21] To be cognizable, a PSG must be "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question."[22]

Flores Jimenez challenges the BIA's failure to recognize "Young Dominican Males Who Resist Gang Recruitment and Oppose Gang Violence" as a cognizable PSG. The IJ found that this proposed group lacked immutability, particularity, and social distinction. The IJ explained that a person could stop resisting gang recruitment and cited BIA precedent rejecting the very same claim as lacking particularity and social distinction. In *Matter of S-E-G-,* the BIA ruled that the characteristics of being young and refusing recruitment are too amorphous and ill-defined to create a meaningful benchmark to assess group membership because "people's ideas of what those terms

---

[21] 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 1208.16(b); *Lukwago v. Ashcroft*, 329 F.3d 157, 182 (3d Cir. 2003).
[22] *S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 540 (3d Cir. 2018) (quoting *In re M-E-V-G-,* 26 I. & N. Dec. 227, 237 (BIA 2014)).

10

mean can vary."[23]  The same applies here.  Our sister circuits have also rejected groups, like Flores Jimenez's proposed group, predicated on resistance to gang recruitment by young people as too amorphous and thus not particular and as lacking social distinction.[24]

For these reasons, Flores Jimenez's claims pertaining to being a "Young Dominican Males Who Resist Gang Recruitment and Oppose Gang Violence" must fail.

### D.  Future Persecution

Flores Jimenez's next contention is that the BIA erroneously held that he did not establish a clear probability of future persecution on account of his membership in the PSG "Dominicans with Severe and Persistent Mental Health Issues."[25]  He claims the BIA ignored evidence when it concluded that he had not shown that he would be involuntarily hospitalized, restrained, or secluded in the Dominican Republic.

The BIA's decision can be reversed only "if the evidence is such that a reasonable factfinder would be compelled to conclude otherwise."[26]  Here, the evidence does not compel the conclusion that Flores Jimenez will be persecuted based on his mental illness. He argues that he was hospitalized in the United States due to paranoid delusions that

---

[23] 24 I. & N. Dec. 579, 584–85 (BIA 2008).

[24] *See, e.g.*, *Rodas-Orellana v. Holder*, 780 F.3d 982, 991–93 (10th Cir. 2015) (rejecting "El Salvadoran males threatened and actively recruited by gangs, who resist joining because they oppose the gangs"); *Mendez-Barrera v. Holder*, 602 F.3d 21, 24, 27 (1st Cir. 2010) (rejecting "[Salvadoran] young women recruited by gang members who resist such recruitment.").

[25] *See Valdiviezo-Galdamez v. Att'y Gen.*, 663 F.3d 582, 591 (3d Cir. 2011) ("To qualify for withholding of removal, a[] [non-citizen] must establish a 'clear probability of persecution,' i.e., that it is more likely than not that s/he would suffer persecution upon returning home.").

[26] *Chavarria v. Gonzalez*, 446 F.3d 508, 515 (3d Cir. 2006) (citing *INS v. Elias-Zacharias*, 502 U.S. 478, 481 (1992)).

11

went untreated for many years. He then asserts that it is not speculative to state that he will be involuntarily hospitalized in the Dominican Republic, especially considering it is a country with negligent mental-health services. However, this argument is entirely speculative. The IJ found that given the lack of resources for mental health treatment in the Dominican Republic, the more likely result is that Flores Jimenez will simply persist without obtaining care, which, without more, is not persecution.[27]

Flores Jimenez also asserts that, although the BIA upheld the IJ's decision that he is a member of the PSG "Bisexual Males in Dominican Republic," it erred by holding that he did not demonstrate a clear probability of future persecution. Again, the record evidence does not compel this conclusion. The BIA affirmed the IJ's conclusion that the LGBTI community faces a "spectrum" of human rights abuses, from discrimination and harassment to violence, but noted that Flores Jimenez had failed to demonstrate a clear probability that he would be targeted for violence based on his bisexuality.[28]

Although "there is more than one way to view the record . . . [,]we are required to uphold the decision of the Board when there is, as in this case, substantial evidence to support it."[29] Here, Flores Jimenez's own evidence shows only that certain segments of the LGBTI community may face varying likelihoods and degrees of abuse. For that reason, the BIA was not compelled to find that, as a bisexual man, Flores Jimenez, more

---

[27] *See Khan v. Att'y Gen.*, 691 F.3d 488, 499 (3d Cir. 2012) (noting that "[t]he lack of access to mental health treatment alone . . . does not create a well-founded fear of persecution").
[28] AR at 6.
[29] *Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 688 (3d Cir. 2015).

likely than not, would suffer persecution.

The BIA also did not err in affirming the denial of the remaining withholding claims. The BIA properly concluded that the PSG "imputed Criminal/Drug traffickers" is neither immutable nor particular.[30] Further, Flores Jimenez does not contest the dispositive finding that the group is amorphous and not particular. Therefore, his arguments with respect to imputed criminality must fail.

Flores Jimenez's arguments about his imputed political opinion claim also fail. Substantial evidence supports the conclusion that he failed to establish that he would be persecuted based on his family's political affiliation from more than 20 years ago.

### E. CAT Claim

Flores Jimenez next argues that the BIA and IJ improperly dismissed his CAT claim, ignoring record evidence of his mental illness, his inability to relocate, the Dominican Republic's abysmal mental health treatment record, and the Dominican government acquiescence to his abuse. To succeed on his CAT claim, Flores Jimenez had to demonstrate that "it is more likely than not" that he would be tortured if removed to the Dominican Republic.[31] Substantial evidence supports the conclusion that the past harm he suffered from the gang member, including a cut to his arm, did not rise to the level of torture.[32] Further, the BIA properly affirmed the IJ's determination that the

---

[30] *See Matter of M-E-V-G-*, 26 I. & N. Dec. at 237–41, 244 (setting the requirements and burdens of proof for proving a particular social group).
[31] *Sevoian v. Ashcroft*, 290 F.3d 166, 174–75 (3d Cir. 2002) (quoting 8 C.F.R. § 208.16(c)(2)).
[32] *See Shardar v. Ashcroft*, 382 F.3d 318, 324–25 (3d Cir. 2004) (holding BIA did not err in determining that petitioner, who was "severely beaten," was not tortured).

13

likelihood of future torture was based on a series of suppositions that were unsupported by the record.[33] We do not reweigh evidence when the conclusions reached by the IJ and BIA are supported by the record.[34]

The record also supports the conclusion that Flores Jimenez has not shown that it is likely he will be involuntarily committed to the lone mental hospital in the country and that he would be one of the few patients restrained in that hospital. The record does not indicate that he would be targeted for torture by either the government or the public because he would be perceived as a criminal or that the IJ failed to consider such a risk in his analysis. It is also clear that the IJ properly considered the risk of torture stemming from Flores Jimenez's sexual identity. In fact, the IJ expressly considered the combined risk from different sources, including criminals, corrupt police, the underfunded health care system, as well as the mistreatment of the LGBTI community and those with mental illness, and concluded that Flores Jimenez still presented a speculative claim. Because the BIA and IJ considered all the relevant evidence, we will not reweigh the evidence to reach the result that Flores Jimenez wants.

Finally, Flores Jimenez's argument that the BIA did not follow *Myrie v. Attorney General*[35] also fails because he did not prove a sufficient likelihood of torture as a factual matter. Thus, the BIA did not need to address whether Flores Jimenez's speculative

---

[33] *See In re J-F-F-*, 23 I. & N. Dec. 912, 917–18 (A.G. 2006) (holding that an alien whose CAT claim is based on a "series of suppositions" must establish that each link in that "hypothetical chain of events" is more likely than not to occur).
[34] *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).
[35] 855 F.3d 509 (3d Cir. 2017).

claims satisfy the legal definition of torture.[36]

### F. Reliance on DHS Form I-213

Finally, Flores Jimenez disputes the DHS's reliance on Form I-213 to establish his alienage. In concluding that the DHS met its initial burden, the BIA properly relied on Form I-213, which lists his birthplace as the Dominican Republic. Such a record bears strong indicia of reliability.[37] Moreover, Flores Jimenez presented no evidence or allegation to challenge the fact of his foreign birth, as memorialized in Form I-213. To the contrary, he admitted the facts of his alienage and his entry without inspection in his sworn asylum application. Likewise, he twice testified that he was born abroad. So, even if there were error with the BIA's reliance on Form I-213, his repeated sworn statements that he was born abroad independently demonstrate his alienage. Therefore, any error would be harmless.

### IV.

For the foregoing reasons, we will deny the petition for review.

---

[36] *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (holding that the BIA is "not required to make findings on issues the decision of which is unnecessary to the results [it] reach[es].").

[37] *Bradley v. Att'y Gen.*, 603 F.3d 235, 239 (3d Cir. 2010) (reiterating that agency action, including an admission record under the Visa Waiver Program, is "entitled to a presumption of regularity") (citation omitted).